**DISTRICT OF COLUMBIA, ex rel. AMERICAN COMBUSTION, INC.**

v.

**TRANSAMERICA INSURANCE COMPANY, Appellant.**

No. 85–5866.

United States Court of Appeals, District of Columbia Circuit.

Argued May 16, 1986.

Decided Aug. 8, 1986.

Thomas G. Corcoran, Jr., Washington, D.C., for appellant.

James W. Taglieri, with whom Robert Cadeaux, Washington, D.C., was on brief, for appellees.

Before MIKVA, SCALIA and BUCKLEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This case arose from a public-works contract let by the District of Columbia. Pursuant to the so-called Little Miller Act, D.C. Code §§ 1–1104–1–1107, the prime contractor was required to obtain performance and payment bonds. The bonds are furnished both to protect the District of Columbia should the contract not be satisfactorily completed and to ensure that all laborers and materialmen on the project will be paid regardless of the prime contractor's solven-

cy. A subcontractor, American Combustion, Inc. (ACI), the plaintiff below, was not paid in full for its work. ACI sued defendant Transamerica Insurance Co., the provider of the bonds, for payment pursuant to the payment bond. The jurisdiction of the district court was based on diversity of citizenship. After a bench trial, the district court found Transamerica liable and ordered it to pay ACI $24,000.

On appeal Transamerica presents four related jurisdictional defenses. Transamerica argues that diversity of citizenship was not proved at trial; that the district court lacked subject matter jurisdiction because the Little Miller Act provides that suits under it shall be brought in D.C. Superior Court; that diversity of citizenship was absent because the District of Columbia is a party to the suit; and that diversity did not exist because Transamerica should be deemed to have assumed the citizenship of its insured (the prime contractor), a corporation not diverse to ACI. Although Transamerica's arguments are sometimes ingenious, we nevertheless find that the district court had jurisdiction over this matter and therefore affirm its opinion.

## I.

Because appellant's challenges are confined to jurisdictional questions, the details of the contracts between the District of Columbia and the companies that performed work for it are not important to this appeal. In brief outline, the arrangement was as follows. The District of Columbia hired the Ronald Hsu Construction Company to repair and replace oil burners at three D.C. schools. Hsu subcontracted some work to ACI and other work to D & L Contractors. D & L in turn subcontracted some of its work to ACI. ACI was not paid for all the work it did at the schools.

Sections 1–1104 through 1–1107 of the D.C. Code require contractors hired by the District of Columbia to obtain certain surety bonds. These provisions of the D.C. Code are known as the "Little Miller Act" because of their similarity to the federal Miller Act, which governs contracts let by the United States. *See* 40 U.S.C. § 270a–270d. Section 1–1104 requires that contractors engaged by the District post bonds both to guarantee the performance of the contract and to guarantee payment to subcontractors. In this case, both the performance bond and the payment bond were entered into by Hsu as principal and Transamerica as surety. Section 1–1105 of the Code in turn provides that "[e]very person who has furnished labor or material in the prosecution of the work provided for in [a government] contract ... shall have the right to sue on [the required] payment bond for the amount ... unpaid at the time of institution of such suit...." The section also provides that all such suits "shall be brought in the name of the District of Columbia for the use of the person suing, in the Superior Court of the District of Columbia...." In this case, however, ACI brought suit in federal district court pursuant to 28 U.S.C. § 1332.

The district court determined that diversity jurisdiction was proper and found for the plaintiff. Transamerica now challenges the district court's jurisdiction.

## II.

### A.

■ Transamerica's first argument is that ACI did not properly prove that it and Transamerica were of diverse citizenship. For purposes of diversity jurisdiction, a corporation is deemed to be a citizen of any state in which it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c); *see generally* 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure §§ 3623–3630 (2d ed. 1984). Thus, for diversity to exist between a corporate plaintiff and a corporate defendant there can be no overlap between them with respect to these places.

■ In a properly pleaded diversity action between corporations the plaintiff will not only allege that there is diversity of citizenship, but will also advert to the

factors set out by § 1332(c) that establish corporate citizenship. Form 2 of the Federal Rules of Civil Procedure provides that allegations of diversity in cases where corporations are parties should track the requirements of § 1332 and include a statement of both the corporations' states of incorporation and their principal places of business. *See* F.R.C.P. Rule 84 & Advisory Committee Notes (forms contained in appendix to the Federal Rules of Civil Procedure intended as a guide for simple, brief, but complete pleading). *See also* 2A J. Moore & J. Lucas, Moore's Federal Practice § 8.10 (2d ed. 1985).

Whether or not diversity existed in fact, the complaint in this case was defective in that it failed to properly allege such diversity. Although the complaint stated that "jurisdiction is vested in this Court in that there is diversity of citizenship between the parties," Complaint ¶ 3, the requisite underlying facts were not properly alleged. The complaint merely stated that the respective parties were "bod[ies] corporate with [their] principal place[s] of business in" different states. Complaint ¶¶ 1, 2. No mention of the parties' states of incorporation was made in the complaint. Thus, we must determine the effect of the defective complaint.

In general, a "[d]efective allegation[ ] of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. Section 1653's liberal amendment rule permits a party who has not proved, or even alleged, that diversity exists to amend his pleadings even as late as on appeal. If the amended allegations are not contested, and nothing appears to the appellate court that would bar jurisdiction, jurisdiction is deemed proper, despite the plaintiff's usual burden of alleging and proving jurisdiction. *See, e.g., Local No. 1 (ACA) Broadcast Employees v. International Brotherhood of Teamsters,* 614 F.2d 846, 852–53 (3d Cir.1980); *Kaufman v. Western Union Telegraph Co.,* 224 F.2d 723, 724–25 (5th Cir.1955), *cert. denied,* 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1956); *Illinois Terminal R Co.*

*v. Friedman,* 208 F.2d 675, 677 (8th Cir. 1953); 13B C. Wright, A. Miller & E. Cooper, *supra,* § 3611 at 518–20; 3 J. Moore, Moore's Federal Practice ¶ 15.09 (2d ed. 1985).

This lenient approach to unchallenged amendments alleging diversity—taking them as true despite the strictly limited nature of all federal jurisdiction—follows from the general approach to pleading diversity adopted by the federal courts. As early as 1904 the Supreme Court, in a case where the complaint alleged that the defendant was a resident rather than a citizen of a particular state, said that

> [t]he whole record, however, may be looked to, for the purpose of curing a defective averment of citizenship, where jurisdiction in a Federal court is asserted to depend upon diversity of citizenship, and if the requisite citizenship, is *anywhere* expressly averred in the record, *or* facts are therein stated which in legal intendment constitute such an allegation, that is sufficient.

*Sun Printing and Publishing Ass'n v. Edwards,* 194 U.S. 377, 382, 24 S.Ct. 696, 697–98, 48 L.Ed. 1027 (1904) (emphasis added).

Thus, ACI's failure to initially plead the elements necessary to make out a showing of diversity does not in and of itself deprive us of jurisdiction. The whole record may be searched to determine if diversity existed. If the record supports a finding that diversity was present, we need not vacate the district court's judgment. Amended allegations of diversity made on appeal, if not contested, will also support the district court's judgment.

In this case, such an amendment has been made. On January 3, 1986, ACI filed with this court a motion relating to its jurisdictional allegations. In that motion ACI averred that it was diverse to Transamerica and spelled out all the requisite details of incorporation and principal places of business to support that allegation. On February 11, 1986, in response to ACI's motion, this court issued an order relating

to the existence of diversity jurisdiction. In that order we said that there did not appear to be any dispute between the parties that all the factual predicates to diversity jurisdiction existed, but added that "[i]f any of the parties to this appeal does, in fact, dispute the states of incorporation of either appellant or appellee, or the location of their principal places of business, a pleading to that effect shall be filed within fifteen (15) days from the date of this order." Order (D.C.Cir. Feb. 11, 1986). Transamerica did not respond to our order. Similarly, at oral argument counsel for Transamerica stated that he did not doubt that ACI and Transamerica were of diverse citizenship.

Thus, unless Transamerica denied ACI's allegations of diversity, triggering the requirement that ACI affirmatively prove the facts necessary to support a finding of diversity, the amended allegations here support a finding of diversity jurisdiction.

Transamerica argues that it did challenge the existence of diversity and that ACI did not adequately respond to that challenge. At trial Transamerica orally moved for a directed verdict on the ground that ACI had not proved diversity. The district court denied this motion on the spot. *See* Transcript of Proceedings at 129–141 (Nov. 19, 1984). Whatever position Transamerica adopted at trial, once ACI's jurisdictional allegations had been made properly on appeal, Transamerica did not challenge the existence of diversity when asked to do so.

Although ACI's lax approach to ensuring that there was record evidence of diversity jurisdiction's existence, and its failure to follow (at least in substance) the standard forms suggested by the Federal Rules of Civil Procedure, are not models of effective pleading and trial technique, we nevertheless have no reason to return this case to the district court. A remand for the purpose of receiving supplemental proof as to the existence of diversity would be merely a formal exercise. Section 1653 allows us to accept amended allegations of diversity. After our February 11th order, and the motions that led to it, the pleadings in this case finally are in order. Given that Transamerica does not in fact challenge the existence of diversity and given that diversity has now been properly pleaded, there is no reason to return this case to the district court. Should a real question of diversity's existence remain when a case is on appeal, our discretion under § 1653 is sufficient to assure that the federal courts do not serve as a forum when they are without jurisdiction. *See* 3 J. Moore, *supra,* ¶ 15.09; 13B C. Wright, A. Miller & E. Cooper, *supra,* § 3611. Accordingly, we conclude that the state of the record and the pleadings, including the motion that prompted our February 11th order, the order itself, and Transamerica's silence following that order, provides adequate support for a finding of diversity jurisdiction.

### B.

Transamerica's second contention on appeal is that the district court lacked jurisdiction because suits brought under the Little Miller Act may be brought only in the District of Columbia Superior Court. The Little Miller Act provides that suits brought under it "shall" be brought in D.C. court. *See* D.C. Code § 1–1105. This by itself is not enough to defeat diversity jurisdiction. All state law claims properly brought in federal court under diversity jurisdiction are cognizable in state court. "Even if diversity of citizenship exists, the federal court will not take jurisdiction over a case unless the plaintiff has asserted a claim cognizable in state courts." 13B C. Wright, A. Miller & E. Cooper, *supra,* § 3602 at 375. Whether the state law that provides for the requisite state court jurisdiction is couched in permissive or mandatory terms has never been thought to affect the federal courts' jurisdiction. Indeed, to allow such linguistic variation in state laws to have any effect would grant the states power to determine the federal courts' docket.

Thus, Transamerica's argument is not that the D.C. Code's jurisdictional provision by itself defeats federal jurisdiction.

Instead, its argument turns on the special nature of the District of Columbia's statutes. Transamerica argues that because the D.C. Code is an act of Congress providing for jurisdiction in the D.C. Superior Court, it should take precedence over the more generalized act of Congress providing for diversity jurisdiction. This argument is not supported by either statute or case law.

Transamerica's argument depends primarily on drawing an analogy between § 1332 and 28 U.S.C. § 1441. Section 1441 provides that any action brought in state court over which the federal courts would have jurisdiction may be removed to federal court "[e]xcept as otherwise expressly provided by Act of Congress." Transamerica argues that the D.C. Code is an Act of Congress that expressly provides that removal of Little Miller Act cases is improper. Transamerica concludes that since removal is improper, original jurisdiction must also be barred despite the fact that § 1332 does not contain the same exception language as does § 1441. Transamerica's argument is wrong on both counts.

The D.C. Code provision, although indisputably an act of Congress, does not expressly provide that removal is improper. Where Congress has desired that cases normally removable must remain in state court it has spoken clearly. *See, e.g.,* 15 U.S.C. § 77v(a) ("No case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."); 28 U.S.C. § 1445 (prohibiting removal of various actions involving railroads, common carriers and workmen's compensation). We decline to find that Congress, when acting in its role as sovereign of the District of Columbia and providing that District of Columbia claims may be brought in the District's local courts, has "expressly" provided that normal federal jurisdictional rules are altered.

The case law also firmly supports the result we reach today. In *District of Columbia ex rel. Driggs Co. v. Ranger Construction Co.,* 394 F.Supp. 801 (D.D.C. 1974), the court held that a claim brought in D.C. Superior Court under the Little Miller Act was properly removed to federal district court. The *Driggs* court did not find any merit in the argument that the Little Miller Act was an express prohibition on removal. In *United States v. District of Columbia,* 669 F.2d 738, 741–42 (D.C. Cir.1981), this court held that section 11–1202 of the D.C. Code, which provides that the D.C. Superior Court has "exclusive" jurisdiction in a certain class of cases, does not preempt 28 U.S.C. § 1345, "which provides generally for access to a federal forum in cases in which the United States is a party." *Id.* at 741. We said that "[w]hile Congress may displace section 1345 in particular categories of cases if it so desires, courts will not infer such displacement unless Congress has made its intention plain." *Id.* A similar rule is appropriate with respect to § 1441 and its displacement; unless Congress has spoken clearly, we will decline to find that it has abolished federal jurisdiction. *See also Eckert v. Fitzgerald,* 550 F.Supp. 88 (D.D.C.1982) (action brought in D.C. Superior Court under statute providing that suit may be brought in D.C. Superior Court was removable to federal district court). Congress knows very well how to strip federal courts of their normal diversity jurisdiction. We decline to find that it has done so absent a clear and express statement of that intention.

Finally, this case was not first brought in Superior Court and then removed; even if we were to find that removal was improper it would not necessarily imply that § 1332 does not confer original jurisdiction here. The clear grant of jurisdiction conferred by § 1332 should not be ignored simply to harmonize the section with the removal provisions. In fact, however, there is no inconsistency; the weight of authority is that both removal and original jurisdiction are proper in cases where Congress has provided for both federal and District of Columbia jurisdiction. (Indeed, counsel for ACI informed us at oral argument that he brought this case in federal court because the last such case he had brought in Superior Court had been removed!) *See, e.g.,*

*United States v. District of Columbia, supra; Eckert v. Fitzgerald, supra; District of Columbia ex rel. Driggs Co. v. Ranger Construction Co., supra.*

Transamerica has failed to show that Little Miller Act cases are not governed by the general principles of diversity jurisdiction. Accordingly, this suit was properly brought in the district court.

### C.

Transamerica's third contention on appeal is that diversity is defeated because the District of Columbia is a party to this appeal. This argument has two parts: first, it must be shown that diversity jurisdiction is improper if the District of Columbia is a full-fledged party; second, it must be shown that the District is in fact more than a nominal party.

■ Transamerica correctly notes that suits between a state and citizens of another state are not cognizable in diversity. 13B C. Wright, A Miller & E. Cooper, *supra*, § 3602 at 366–67. Thus, if D.C. can properly be treated as a state within the meaning of this rule, and if D.C.'s presence in this suit is more than nominal, it could be argued that a federal forum for this suit was improper, in light of the rule in *Strawbridge v. Curtis*, 7 U.S. (3 Cranch.) 267, 2 L.Ed. 435 (1806), that "each plaintiff must be capable of suing each defendant." 13B C. Wright, A. Miller & E. Cooper, *supra*, § 3605 at 400. The presence of parties of diverse citizenship on opposite sides of the litigation makes no difference. *But see, e.g., Parker v. District of Columbia*, 515 F.Supp. 10, 11 (D.D.C.1981) (allowing pendent party jurisdiction over D.C. in a diversity action); *Laird v. Chrysler Corp.*, 92 F.R.D. 473 (D.Mass.1981) ("Joinder of the state of Rhode Island as a third party-defendant would not destroy diversity jurisdiction already established because a state is not a citizen for diversity purposes."); 13B C. Wright, A. Miller & E. Cooper, *supra*, § 3602 at 367 & n. 13. Because we conclude that the District of Columbia is in any event a nominal party, we need not reach the question of whether these lower court cases properly applied the Supreme Court's *Strawbridge* precedent.

■ The question is whether this is a suit between ACI and Transamerica, or between the District of Columbia and Transamerica, as the caption seems to indicate. If the latter is the correct characterization, then the suit is not cognizable in federal court and the district court's judgment must be vacated.

ACI argues that the District of Columbia is not a real party in interest, that its presence in this action is merely nominal, and that diversity jurisdiction is therefore proper. ACI is correct. Beginning with the statute itself, section 1–1105 of the D.C. Code states that suits for payment on the surety bonds "shall be brought in the name of the District of Columbia" but that "[t]he District of Columbia shall not be liable for the payment of any costs or expenses of any such suit." In reality, the District has absolutely nothing to do with this case. Although the District of Columbia is the beneficiary of the lower construction costs made possible by Little Miller Act guarantees of payment, it has no pecuniary interest in this lawsuit, is not involved in its prosecution, and indeed is protected from any liability for its costs or results. The common-sense conclusion is that the District of Columbia is a nominal party and that the suit is between private parties whose citizenship will determine diversity.

An examination of the Federal Rules and the relevant precedents leads to the same conclusion. Rule 17(a) of the Federal Rules of Civil Procedure provides that "[e]very action shall be prosecuted in the name of the real party in interest.... [W]hen a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States." The Rule thus takes a realistic approach to who may prosecute a suit, but creates an exception for suits brought in the name of the United States. The Rule and the courts' treatment of Miller Act suits brought in the name of the

United States indicate that this suit is properly in federal court.

Moore's Federal Practice explains that Rule 17 is founded on the principle that "[a]n action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced." 3A J. Moore & J. Lucas, *supra*, ¶¶ 17.02, 17.07. The substantive law (the D.C. Code) clearly grants the substantive right sought to be enforced to ACI.

In opposition to this seemingly clear interpretation of Rule 17, Transamerica notes that Rule 17(a) lists several kinds of parties (executors, administrators, guardians and the like) who may sue in their own name. The Advisory Committee notes to Rule 17 state that the parties listed in Rule 17 are "not exceptions to, but illustrations of, the rule." Transamerica argues by analogy that Rule 17's provision relating to the United States should similarly be considered not an exception but an explication. That is, Transamerica asserts that Rule 17 provides that the United States *is* the real party in interest in actions where it is a statutorily required plaintiff. Transamerica concludes that the District of Columbia is similarly the real party in interest here. We disagree.

The provision in Rule 17(a) dealing with executors was added in 1966; the provision concerning the United States was added in 1937. *See* 3A J. Moore & J. Lucas, Moore's Federal Practice ¶ 17.15 (2d ed. 1985). The absence of any contrary history and the simple fact that, aside from the proviso in the Rule, the United States is clearly *not* the real party in interest and indeed has no part in Miller Act suits counsels against interpreting the Rule as Transamerica suggests. Most, but not all, courts have concluded that the United States is not the real party in interest in Miller Act suits. *See* 3A J. Moore & J. Lucas, *supra*, ¶ 171.5 at 17–176–177 & nn. 4 & 5 (collecting cases holding that United States is not the real party in interest in Miller Act suits and asserting that this view is dominant); American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts 494–96 (1969) (same, but expressing more uncertainty). Given that the United States is not the real party in interest in Miller Act suits, it is particularly unpersuasive to argue that, by analogy, the District is the real party in interest here.

Finally, we note that the nominal presence of the District is probably an historical accident. The United States was made a nominal party in Miller Act cases in order to give federal courts jurisdiction. *See* 40 U.S.C. § 270b(b); *United States ex rel. Bryant Electric Co. v. Aetna Casualty & Surety Co.*, 297 F.2d 665 (2d.Cir.1962); H.R.Rep.No. 1263, 74th Cong., 1st Sess. (1935); American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts 493–97 (1969); 3A J. Moore & J. Lucas, *supra*, ¶ 17.15 at 17–175–176 & nn. 2 & 3. No other reason has been suggested to us than that the District of Columbia was in turn made a nominal party in the Little Miller Act simply because that paralleled the Miller Act. If no better reason than this exists for the District's presence, it makes little sense to let that presence defeat federal court diversity jurisdiction.

That this suit was brought in the name of the District of Columbia does not defeat diversity jurisdiction. The action is between ACI and Transamerica and is properly in federal court.

### D.

■ Transamerica's last argument is that diversity did not exist because Transamerica should be deemed to assume the citizenship of its insured for purposes of this suit.

Section 1332(c) of title 28 provides, *inter alia*, that

in any direct action against the insurer of a policy or contract of liability insurance, ... to which action the insured is not joined as party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen....

Transamerica argues that under this provision it should be deemed to have the same

citizenship as Hsu. This would defeat diversity.

Although a suit on a performance bond is in some ways logically equivalent to a suit on a liability policy, the language of the section simply does not cover this case. The fact that under both a surety bond and a policy of liability insurance the victim of a wrong (in one case a tort, in the other a breach of contract) can look to someone besides the wrongdoer to make him whole is simply not enough to bring Little Miller Act suits within the purview of the direct action statute. No policy of liability insurance is involved in this action. And although the action by ACI against Transamerica could be said to be "direct," it was not made so by a statutory change in the law (the creation of a direct right of action against an insurance company by legislative pronouncement). Unlike the derivative liability that arises under an insurance policy, a surety's obligation to pay, by design, is owed to the beneficiary.

Moreover, although the statute is clear on its face, we also note that suits like the one here were clearly not what Congress had in mind when it amended § 1332(c) to include the provision at issue. In its report on the legislation that amended § 1332(c), the Senate said that

[t]he purpose of the ... legislation ... [is] to eliminate under the diversity jurisdiction of the U.S. district courts, suits on certain *tort* claims in which both parties are local residents, but which, under a state "direct action" statute may be brought directly against a foreign insurance carrier without joining the local tort-feasor as a defendant.

S.Rep. No. 1308, 88th Cong., 2d Sess. 1, *reprinted in* 1964 U.S. Code Cong. & Ad. News 2778 (emphasis added). The report went on to explain in detail how direct action statutes in certain states threatened a deluge of purely local tort claims in the federal courts. *See id.*

Given the limited and precise purpose behind the relevant language in § 1332(c), and the narrowness of the language itself, it would be inappropriate and unwise to extend that section to cover the situation here. While it may be sound policy to remove tort suits brought under direct-action statutes from the federal courts, we decline to extend the statute to bar all claims that are arguably analogous. If Congress wishes to exclude Little Miller Act cases from the federal courts, it can do so, but it must do so expressly.

### III.

We do not find any of Transamerica's jurisdictional defenses persuasive. Accordingly, the judgment of the district court is

*Affirmed.*