**STATE OF WEST VIRGINIA, Plaintiff,**

v.

**MORGAN STANLEY & CO. INCORPORATED; Salomon Brothers, Inc.; and Goldman, Sachs & Co., Defendants.**

**Civ. A. No. 2:89–1463.**

United States District Court,
S.D. West Virginia,
Charleston Division.

July 19, 1990.

---

Roger W. Tompkins, Atty. Gen., Thomas J. Gillooly, Deputy Atty. Gen., State of W.Va., Rudolph L. DiTrapano, Rebecca A. Baitty, Charleston, W.Va., Mary Lee Wolff, Memphis, Tenn., for plaintiff.

Stephen G. Jory, Elkins, W.Va., Davis, Polk & Wardwell, New York City, Robert B. King, Charleston, W.Va., Douglas Liebhafsky, Ralph M. Levene, New York City, John C. Palmer, IV, Charleston, W.Va., Sullivan & Cromwell, New York City, for defendants.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court on the plaintiff's motion to remand the above-styled civil action to the Circuit Court of Kanawha County, West Virginia.

### I. *The Case*

Plaintiff originally commenced this action on October 23, 1989, in the Circuit Court of Kanawha County, West Virginia.

An amended complaint was filed on November 1, 1989.[1] Defendants Morgan Stanley and Salomon are citizens of Delaware and New York, both being Delaware corporations with principal places of business in New York. Defendant Goldman Sachs is not a citizen of West Virginia, being a New York limited partnership with its principal place of business in New York and none of its general partners residing in the State of West Virginia.[2]

Plaintiff's complaint alleges violations of sections 32–1–101 and 32–4–410(a)(2) and (b) of the West Virginia Securities Act; violation of section 12–6–12 of the West Virginia Investment Management Law; breach of common law fiduciary duties; common law fraud; common law constructive fraud; common law civil conspiracy; and negligence by all defendants. The complaint also alleges violation of section 12(2) of the Securities Act of 1933 by defendants Morgan Stanley and Goldman Sachs. The action is brought on the State's own behalf and "as *parens patriae* on behalf of its citizens and of those political subdivisions located within the State harmed by the acts of the Defendants." Complaint, ¶ 1.

By way of relief, plaintiff seeks compensatory, consequential and punitive damages in an unspecified amount in excess of $100,000,000. *Id.* at ¶ 45. Defendants have brought counterclaims, alleging that in the event they are found liable to the State and/or the Board of Investments, as its instrumentality or alter ego, they are entitled to a setoff or recovery of profits realized on similar trading transactions which are not a subject of this action. While the other defendants have not placed a dollar value on the past profits, defendant Salomon contends that it is not less than $150 million.

On November 22, 1989, defendants removed the action to this court pursuant to Title 28, United States Code, Section 1441,

---

1. All references hereafter to plaintiff's complaint are to the amended complaint.

2. The State has dismissed its action against three other securities dealers. County NatWest Government Securities, Inc., and County Nat-

West, Inc., were voluntarily dismissed on December 1, 1989. Greenwich Capital Markets, Inc., was dismissed by an agreed order entered April 16, 1990.

on the basis of the diversity provisions of Title 28, United States Code, Section 1332. Defendants' removal petition asserts that the West Virginia State Board of Investments, rather than the State itself, is the real party in interest in this action and that the Board, as a "body corporate," is a citizen of West Virginia for purposes of diversity jurisdiction. Defendants agree that Title 15, United States Code, Section 77v(a), provides that claims properly brought in a state court under the 1933 Securities Act are not removable. However, defendants assert that section 77v(a) does not preclude removal of the entire action when the separate and independent claim provisions of section 1441(c) of the removal statute are met. Alternatively, defendants contend that the 1933 Securities Act claims are sham claims interposed for the purpose of thwarting removal and that completely baseless 1933 Act claims do not bar removal.

Plaintiff seeks to remand this action to the Circuit Court of Kanawha County, asserting that this court lacks subject matter removal jurisdiction. First, plaintiff denies defendants' contention that the 1933 Securities Act claim is a sham claim and asserts that section 77v(a) of the 1933 Act precludes federal question removal jurisdiction. Second, plaintiff asserts that the State itself is the real party in interest, with the Board acting merely as a conduit for investing State funds. In addition, plaintiff contends that even if the Board is the real party in interest, it is an arm or alter ego of the State, and, like the State, not a "citizen" of any state for diversity purposes. Consequently, the court would lack removal jurisdiction on diversity grounds. Finally, plaintiff contests defendants' position that the action is removable under the separate and independent claim provision of section 1441(c). Plaintiff asserts that none of the claims are removable if sued on alone and, even if they were, they are not "separate and independent."

## II. *Background*

By enactment of the Investment Management Law, W.Va.Code §§ 12-6-1 through 12-6-17 (1985 Repl.Vol. & 1989 Cum. Supp.), the West Virginia Legislature created the West Virginia Board of Investments for the purpose of "increasing the investment return" on funds belonging to the State and its political subdivisions. § 12-6-1. At all relevant times, the Board consisted of the governor, the auditor, and the treasurer of the State.[3] § 12-6-3; Complaint ¶ 10. The Board is empowered generally, *inter alia,* to engage in transactions involving the purchase and sale of securities. § 12-6-5. In particular, the Board is empowered to "[c]onsolidate and manage moneys, securities and other assets" of a consolidated investment fund consisting of state funds (hereinafter, the "state account") and funds from political subdivisions choosing to participate in the common investment (hereinafter, the "local government account"). §§ 12-6-5(11), 12-6-8-(b). The Board is authorized to combine the state and local government accounts "for the common investment of the consolidated fund on an equitable basis." § 12-6-8(b).

Each unit of state government is authorized to make monies available to the Board for deposit in the state account, § 12-6-8(c), and, with a few exceptions, the Board is the sole agency for the investment of state funds, § 12-6-13. Political subdivisions of the state are authorized to enter into agreements with the Board for the investment of their monies. § 12-6-8(d). Costs and expenses of the Board are chargeable on a pro rata basis from the earnings of the Fund, §§ 12-6-6, 12-6-8(f), and earnings or losses are to distributed among the Fund participants in an equitable manner, § 12-6-8(f).

The funds at issue in this action were part of the Consolidated Investment Fund. The treasurer served as the custodian of all the funds, securities and assets of the Con-

---

**3.** Plaintiff's reply memorandum states that the Board also consists of four laypersons. However, the additional members of the Board were not added until an April 8, 1989, amendment to § 12-6-3, after the December 1988 discovery of the trading losses complained of in this action.

solidated Investment Fund[4] and the "office of the state treasurer [acted] as staff agency for the board." § 12–6–4. Staff in the treasurer's office managed the investments of the Fund under policy guidelines established by the Board. § 12–6–12. Among the funds in the state account were tax revenues, federal funds and service fees, all of which were used to fund state operations and capital improvements projects. Complaint at ¶ 9. During the years 1986 and 1987, the size of the Consolidated Fund ranged from approximately $2.2 billion to approximately $1.978 billion. Funds in the state account ranged from approximately $1.81 billion to $1.586 billion, while funds in the local account ranged from approximately $405 million to $392 million. Affidavit of D. Jerry Simpson at ¶ 9, attached to plaintiff's Reply Memorandum. Based upon these figures, it is apparent that approximately 80% of the funds were in the state account, with the remaining 20% being in the local government account.[5]

By rules and regulations promulgated under the authority of section 12–6–5(5), each participant in the Fund owns "an undivided interest in the portfolio of the Consolidated Fund based on the participant's prorata contribution of assets at any time," with one dollar ($1.00) of contribution equal to one unit of ownership. Rule 5.01, Legislative Rules, W.Va. State Board of Investments, Title 113, Code of State Rules, Series I (effective March 10, 1984), *quoted in* Letter from Roger W. Tompkins & John E. Shank to Thomas E. Loehr (Dec. 4, 1989) at 4, Exhibit I to Defendant's Memorandum in Opposition. While the manner in which losses are to be distributed is not clear, the Attorney General has opined that "losses must be apportioned ... on a pro rata basis among Fund participants who were participating in the Fund at the time the losses occurred." *Id.* at 5. Notwithstanding the Attorney General's opinion that losses are

to be apportioned among all Fund participants, no losses at issue here had been assessed against participating political subdivisions at the time this suit was instituted. *See id.* at 4–5. To the contrary, the participating political subdivisions had received payments for earnings on their investments when their proportionate share of earnings was either a lesser sum or an actual loss. *Id.* at 1–3. Indeed, to date there is no indication that any action has been taken to recover those overpayments, or to assess any of the Fund's losses against the political subdivisions.

Plaintiff asserts that in the course of investing the monies in the Consolidated Investment Fund, accounts were opened with each of the defendants in the name of the State and the transactions complained of were conducted by staff in the treasurer's office and entered into in the name of the State or the treasurer as customer. Complaint at ¶ 12; Simpson Affidavit at ¶ 8 and attachments. Defendants do not dispute that the accounts were opened in the name of the State or that the transactions complained of were entered into in the name of the State or the treasurer. However, defendants contend that the treasurer's staff was acting as the Board's agent in managing the Fund and that it was the Board, not the State, who engaged in the transactions complained of and sustained the alleged losses. Defendants also point to the fact that it was the Board, and not the State, that solicited and retained counsel to pursue this action and that by authorizing the Board to "sue and be sued," the legislature intended that the Board be the proper party to bring this action. In defendants' view, the State is merely one of many investors in the Fund, and, accordingly, is not the real party in interest because it has no more standing to bring this suit in its own right than would an investor

4. The State's reply brief states that the governor is the custodian of the funds with the treasurer being the depository of the funds. However, the arrangement referred to in the reply brief is the result of an amendment to § 12–6–4 which did not become effective until April 8, 1989, after the events complained of had occurred.

5. During December 1988 and January 1989, many of the political subdivisions withdrew their monies from the Fund, Request for Proposal by Charles G. Brown, Attorney General, at 4, Exhibit F to Defendants' Memorandum in Opposition, presumably increasing the proportionate share of funds in the state account at the time suit was commenced.

with a bank or mutual fund be the proper party for bringing an action against a third party for injury to the bank or mutual fund.

### III. *Discussion*

### A. Removal Jurisdiction

The propriety of the removal of this action from state court is governed by Title 28, United States Code, Section 1441, which provides in pertinent part:

§ 1441. Actions removable generally

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

With respect to the requirement that the case be one over which the district court has original jurisdiction, Title 28, United States Code, Section 1331, grants district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Section 1332(a)(1) grants district courts original jurisdiction where, *inter alia,* the amount in controversy exceeds $50,000 and is between "citizens of different States."

In order to establish diversity jurisdiction under Title 28, United States Code, section 1332(a)(1), the action must be between "citizens of different States." *E.g., Wisconsin v. Maryland Nat'l Bank,* 734 F.2d 1015, 1016 (4th Cir.1984). It is well settled, and defendants do not dispute, that a state is not a citizen for purposes of diversity jurisdiction. *E.g., Postal Tel. Cable Co. v. Alabama,* 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894). Consequently, a suit between a state and a citizen of another state is not a suit between citizens of different states and diversity jurisdiction does not exist. *Postal Tel.,* 155 U.S. at 487, 15 S.Ct. at 194; *Harris v. Pennsylvania Turnpike Comm'n,* 410 F.2d 1332, 1333 n. 1 (3d Cir.1969), *cert. denied,* 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497 (1970) (citing *State Highway Comm'n v. Utah Constr. Co.,* 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929); *Postal Tel.,* 155 U.S. 482, 15 S.Ct. 192); *Krisel v. Duran,* 386 F.2d 179, 181 (2d Cir.1967), *cert. denied,* 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1968) (citing *Postal Tel.,* 155 U.S. at 487, 15 S.Ct. at 194).

It is equally well settled, however, that in determining diversity jurisdiction, the court will disregard the citizenship of nominal or formal parties and look to the citizenship of the "real and substantial parties to the controversy." *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 460–61, 100 S.Ct. 1779, 1781–82, 64 L.Ed.2d 425 (1980) (citing *McNutt v. Bland,* 2 How. 9, 15, 11 L.Ed. 159 (1844); *see, Marshall v. Baltimore & Ohio R. Co.,* 16 How. 314, 328–29, 14 L.Ed. 953 (1854); *Coal Co. v. Blatchford,* 11 Wall 172, 177, 20 L.Ed. 179 (1871)). Accordingly, section 1332(a)(1) does not confer original jurisdiction in the district courts when a state is the real party in interest, *Wisconsin,* 734 F.2d at 1016, and removal jurisdiction cannot be based upon the diversity provisions of section 1441(b), *Postal Tel.,* 155 U.S. 482, 15 S.Ct. 192.

The requirement that diversity is based only upon the citizenship of real and substantial parties to the controversy parallels, but is not identical to, the requirement of Rule 17(a) of the Federal Rules of Civil

Procedure that an action must be prosecuted by the real party in interest. *Navarro,* 446 U.S. at 462 n. 9, 100 S.Ct. at 1782 n. 9. Under Rule 17(a), in a diversity action, the procedural "real party in interest" is the party granted a cause of action under substantive state law. *Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.,* 485 F.2d 78, 83 (4th Cir.1973), *cert. denied* 415 U.S. 935 (1974); *see generally,* 6A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1554 (2d ed. 1990). By contrast, for purposes of determining diversity of citizenship, a "real party in interest" is one who has a " 'substantial stake' in the outcome of the case." *Krier–Hawthorne v. Beam,* 728 F.2d 658, 664 n. 8 (4th Cir.1984) (Murnaghan, J., dissenting) (citing *Lester v. McFaddon,* 415 F.2d 1101, 1105–06 (4th Cir.1969); *Navarro,* 446 U.S. at 462 n. 9, 100 S.Ct. at 1782 n. 9)); *West Virginia v. Anchor Hocking Corp.,* 681 F.Supp. 1175, 1178 (N.D.W.Va. 1987), *review denied,* 857 F.2d 1469 (4th Cir.1988). The result is that the procedural real party in interest, although granted a cause of action under substantive state law, may be only a nominal party whose citizenship is disregarded in determining diversity jurisdiction for lack of a substantial stake in the outcome of the litigation. *E.g., District of Columbia ex rel. American Combustion, Inc. v. Transamerica Ins. Co.,* 797 F.2d 1041, 1047–48 (D.C.Cir. 1986) (District of Columbia was the real party in interest under Rule 17(a) by virtue of a statute requiring that suits for payment on a contractor's surety bond "be brought in the name of the District of Columbia," but having no interest in the outcome of the litigation, the District of Columbia was a nominal party, not the real party in interest, for purposes of diversity jurisdiction).

Defendants contend that the State of West Virginia is merely a nominal or formal party to this action inasmuch as it is only one of many investors in the Consolidated Fund and its interest is purely derivative and indirect as compared to the interest of the Board. According to defendants, the Board of Investments is the real party in interest for purposes of determining diversity of citizenship and, as a "body corporate," *see* W.Va.Code § 12–6–3, independent of the State, diversity exists between the Board and the defendants.

Whether a state is the real party in interest for diversity purposes must be determined by looking at the "essential nature and effect of the proceeding." *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); *Anchor Hocking,* 681 F.Supp. at 1178 (citing *Ford Motor,* 323 U.S. 459, 65 S.Ct. 347); *West Virginia v. Haynes,* 348 F.Supp. 1374, 1377 (S.D.W.Va.1972) (citing 32 *Am.Jur.*2d, *Federal Practice & Procedure,* § 106 (1967); *Ex parte Nebraska,* 209 U.S. 436, 28 S.Ct. 581, 52 L.Ed. 876 (1908)). In particular, a state, as a plaintiff, is the real party in interest for diversity purposes "when the relief sought is that which enures to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate." *Missouri, Kan. & Tex. Ry. Co. v. Missouri R.R. & Warehouse Comm'r,* 183 U.S. 53, 59, 22 S.Ct. 18, 20–21, 46 L.Ed. 78 (1901).

In *Missouri,* a state-created board of railroad commissioners filed suit in state court against the railway company seeking to enforce an order prohibiting the railway company from charging rates in excess of those set by the commissioners. The case reached the Supreme Court when the state court refused the railway company's petition for removal but the railway company nonetheless filed its suit in federal court and the federal court denied the commissioner's motion to remand. In reviewing the state court's refusal to order removal on the grounds that the State of Missouri was the real party in interest, the Court analyzed the effect of the suit in the context of case law construing the Eleventh Amendment as prohibiting actions in federal court when the relief sought and any judgment obtained would effectively operate against the state. Applying a reverse analysis, the Court held that inasmuch as the action would not result in the recovery of any money for the state treasury and any judgment would not inure "in any degree" to the benefit of Missouri as a state,

the real parties in interest were the railway company and its customers, not Missouri. *Id.* at 59, 22 S.Ct. at 20–21. The Court further held that a state's "general governmental interest in the welfare of its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws," is not sufficient to make it the real party in interest to the litigation. *Id.* at 60, 22 S.Ct. at 21; *Blease v. Safety Transit Co.,* 50 F.2d 852, 854 (4th Cir.1931) (citing *Missouri,* 183 U.S. at 60, 22 S.Ct. at 21). Rather, the state's interest "must be one in the State as an artificial person." *Missouri,* 183 U.S. at 60, 22 S.Ct. at 21 (citing *Reagan v. Farmer's Loan & Trust Co.,* 154 U.S. 362, 362–90, 14 S.Ct. 1047, 1047–51, 38 L.Ed. 1014 (1894)); *Blease,* 50 F.2d at 854 (citing *Reagan,* 154 U.S. at 390, 14 S.Ct. at 1051).

Subsequent cases dealing with a state as a plaintiff have continued to apply the test enunciated in *Missouri,* focusing on whether the state itself will benefit from any relief ultimately obtained and giving particular consideration to the litigation's effect on the state treasury. *Transamerica,* 797 F.2d at 1047 (District of Columbia not real party in interest when, among other factors, it has no pecuniary interest in the outcome of the litigation); *Blease,* 50 F.2d at 854 (state is not real party in interest when its only interest is in compelling obedience to its legal orders and laws); *Anchor Hocking Corp.,* 681 F.Supp. at 1178 & n. 3 (state is real party in interest and case must be remanded when the "true stakeholders" in an action to recover federal job training funds are the state's citizens inasmuch as the funds were provided for the public purpose of developing and advancing "the business prosperity and economic welfare" of the state); *Louisiana ex rel. Guste v. Fedders Corp.,* 524 F.Supp. 552, 557 (M.D.La.1981), *reconsideration denied,* 539 F.Supp. 582 (1982) (state not real party in interest when its consumers as a whole rather than the state treasury will be benefited by the relief sought); *Skandia Am. Reins. Corp. v. Schenck,* 441 F.Supp. 715, 722 (S.D.N.Y.1977) (state not real par-

ty in interest when assets of insolvent insurer will be distributed for the benefit of its creditors rather than the public fisc); *Haynes,* 348 F.Supp. at 1377 (state is real party in interest and action to recover on a road construction surety bond must be remanded where state was party to the contract, the bond was payable to the state, and the financial and other benefits of road construction inured to the state's citizens); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cavicchia,* 311 F.Supp. 149, 157–59 (S.D.N.Y.1970) (state not real party in interest when any property recovered in a securities fraud action would be for the benefit of the persons defrauded, not the state).

■ A narrow reading of *Missouri* would suggest that the state is the real party in interest for diversity purposes only when the relief sought inures to the benefit of the state alone. However, subsequent cases have not been so limiting. So long as the state is more than a nominal or formal party and has a real interest, pecuniary or otherwise, in the outcome of the litigation, it has been held that the State is a real party to the controversy and removal on diversity grounds is improper. *Missouri ex rel. Webster v. Freedom Fin. Corp.,* 727 F.Supp. 1313 (W.D.Mo.1989) (state is real party in interest and removal improper where state sought to recover damages for individual defrauded consumers but also had a quasi-sovereign interest in an honest marketplace for its citizens); *Maine v. Data Gen. Corp.,* 697 F.Supp. 23 (D.Me. 1988) (state is real party in interest and removal improper where state brought suit "for the use of" a victim of discrimination but also had its own quasi-sovereign interest in securing protection against discrimination for other workers); *New York v. General Motors Corp.,* 547 F.Supp. 703 (S.D.N.Y.1982) (state is real party in interest and removal improper where state sought to recover damages for defrauded consumers but also had quasi-sovereign interest in securing an honest marketplace and was party who would be bound by the results of the action).[6]

---

**6.** It is suggested in *Transamerica,* 797 F.2d at 1047, that once it is determined that a state is a

■ Applying the principles enunciated by the Supreme Court in *Missouri* and by lower courts in subsequent cases, the court is persuaded that the defendants' attempts to characterize the Board, rather than the State, as the real party in interest for diversity purposes are misguided. The only interest the Board has in the outcome is negligible at best. Regardless of who had the authority to acquire, hold and dispose of the securities which are the subject of this suit and regardless of who handled the transactions complained of, the monies in the Fund did not belong to the Board for any purpose other than the limited one of managing the investment of those funds. Although the Board's investment activities were intended to be profitable, any monies earned beyond its own expenses were to be distributed back to the entities who made the funds available. Similarly, any losses sustained by the Board's activities were to be assessed against the Fund participants. The monies in the Consolidated Fund were in the hands of the Board for investment purposes only. Aside from having fewer funds to invest, the Board itself was not affected by the losses sustained as a result of the defendants' alleged misconduct.

The vast majority of the monies maintained in the Consolidated Fund were monies placed there by the State and were returnable to the State. The extent, if any, to which the political subdivisions are entitled to a share of any future recovery is unclear on the record before the court inasmuch as none of the losses sustained have been assessed against them. The State alone has absorbed the losses as of this point and no action has been taken to recover overpayments the political subdivisions may have received. Although the political subdivisions may have a stake in the outcome of this litigation, the interest of the State, which appears to have sustained most, if ultimately not all, of the losses, is paramount. The potential existence of other real parties in interest to the controversy does not negate the State's own real, substantial and dominant interest in the outcome of this litigation nor does it in this instance serve to create diversity jurisdiction.[7]

The court thus concludes that the State of West Virginia is the real party in interest to this controversy for purposes of diversity jurisdiction.[8] Accordingly, the State not being a citizen of any state for purposes of diversity jurisdiction, this court does not have subject matter jurisdiction over this action under the diversity provisions of section 1441(b).

Defendants' contention that removal of this action is properly premised on the separate and independent claims provision of section 1441(c) must also fail. Section 1441(c) provides that an otherwise non-removable claim—in this instance, the 1933 Securities Act claims against defendants Morgan Stanley and Goldman Sachs—is nonetheless removable when joined with a separate and independent claim—in this instance, the state law claims—which would be removable if sued upon alone. Inasmuch as the court has determined that the state law claims are not removable if sued upon alone, one of the essential requirements of section 1441(c) is not satisfied.[9]

real party to the controversy, the complete diversity requirement enunciated in *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), cannot be met even if a diverse party is aligned with the state. *See* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure*, § 3602 (2d ed. 1984) (diversity jurisdiction, being based upon a controversy between "citizens of different States," requires that each party be a citizen of a state).

7. Moreover, it would seem that the State has a quasi-sovereign interest in the economic wellbeing of its political subdivisions sufficient to make it a real party in interest not only as to its own claims but also as to the claims asserted on behalf of its political subdivisions. *See Freedom*

*Fin. Corp.*, 727 F.Supp. 1313; *Data Gen. Corp.*, 697 F.Supp. 23; *General Motors Corp.*, 547 F.Supp. 703.

8. Having concluded that the State, and not the Board of Investments, is the real party in interest for purposes of diversity jurisdiction, it is unnecessary for the court to determine whether the Board is the arm or alter ego of the State.

9. In so holding, it is unnecessary to determine whether the state law claims are separate and independent. Nor is it necessary to address defendants' assertion that the 1933 Securities Act claims are sham claims designed to thwart removal inasmuch as deletion of those claims

Having determined that removal jurisdiction does not exist under any of the provisions of section 1441, the court concludes that this action was improvidently removed and must be remanded.

### B. Standing

The defendants' arguments that the State is not the real party in interest in this litigation for purposes of diversity jurisdiction are intertwined with arguments relating to the standing of a party to bring an action. In particular, defendants assert that the State lacks standing to bring this suit as *parens patriae* on behalf of its citizens and the political subdivisions who participated in the investment activities of the Consolidated Fund. Defendants also contend that the State's interest in this litigation, as only one of a number of investors in the Fund, is analogous to the interest of an investor in a bank or mutual fund, and conclude that the State lacks standing to pursue these claims by reason, it is claimed, of the indirectness of the State's injury.

Questions of standing involve a determination of whether the plaintiff is the proper party to assert a claim under the applicable substantive law. 13 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 3531 (2d ed. 1984). When the issue arises in a claim for a private rather than a public wrongdoing, it is commonly resolved by defining causes of action or identifying the real party in interest.[10] *Id.* Inasmuch as the court has determined that this action was improvidently removed and must be remanded to the Circuit Court of Kanawha County for further disposition and inasmuch as the standing questions raised by the defendants are to be determined under procedural and substantive state law, the court declines to address them and leaves their resolution to the state court.

### IV. Conclusion

For the reasons stated, it is ORDERED that plaintiff's motion to remand be, and the same hereby is, granted and that this civil action be, and the same hereby is, remanded to the Circuit Court of Kanawha County, West Virginia, and stricken from the docket of this court.

---

would not alter the court's ruling that it lacks diversity removal jurisdiction.

**10.** In this context, the real party in interest is the procedural real party in interest, *see supra* pp. 336–37.