Joseph HARMON and Marilyn Harmon, Plaintiffs–Appellants,

v.

OKI SYSTEMS and Crown Equipment Corporation, Defendants–Appellees.

No. 96–3287.

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1997.

Decided June 2, 1997.

Peter C. King, J. Kevin King (argued), Cline, King & King, Columbus, IN, Tom G. Jones, Jones, Drury, Eggers & Hoffman, Franklin, IN, for Joseph Harmon and Marilyn Harmon.

Andrew P. Wirick, Randall C. Helmen (argued), Hume, Smith, Geddes, Green & Simmons, Indianapolis, IN, for OKI Systems.

Stephen E. Arthur, Steers, Sullivan, McNamar & Rogers, Indianapolis, IN, for Crown Equipment Corp.

Before FLAUM, EASTERBROOK and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

This is a products liability case stemming from injuries Joe Harmon suffered when his foot was pinned between a wall and a forklift he had been driving. After Harmon and his wife sued the manufacturer and the company that serviced the forklift in Indiana state court, the manufacturer removed the

case to the United States District Court for the Southern District of Indiana. After nearly 2 years of discovery the Harmons filed a motion to remand. Judge David Hamilton denied the motion and granted summary judgment for the defendants. This appeal followed.

Harmon had driven forklifts at the Cummins Engine Plant in Indianapolis, Indiana, for over 19 years. On the morning of July 29, 1991, he was operating a "Rider," an electric-powered "stand-up" forklift manufactured by Crown Equipment. Harmon used the Rider for 6 hours before lunch, took a break, and resumed operations in the afternoon. Throughout the day, the brakes on the Rider, which operate just the opposite as do brakes on a car (i.e., you have to press down on the pedal to *disengage* the brakes), worked properly. Shortly after resuming work, Harmon jumped off of the Rider to retrieve a box. As he was about to pick up the box, he saw the Rider coming toward him. Harmon tried to jump back onto the forklift, but his foot became pinned between the Rider and a concrete wall. He was unable to free himself and called for help. Although a number of co-workers came to his aid, they were unable to move the Rider until Harmon stepped on the brake pedal with his other foot and drove away from the wall.

In July 1993 the Harmons sued Crown and OKI Systems, the company that sold and serviced the Rider, in Indiana state court. Mr. Harmon's suit alleged Crown negligently designed the Rider and was strictly liable for selling a product that was defective due to inadequate warnings. Mr. Harmon also asserted that OKI negligently maintained the forklift. Mrs. Harmon tacked on a loss of consortium claim, and both Harmons sought punitive damages.

On August 20, 1993, Crown filed a notice of removal and civil cover sheet in district court, alleging diversity jurisdiction existed under 28 U.S.C. § 1332. The notice stated Crown and OKI were Ohio corporations and the Harmons were Indiana residents. However, the notice, which was no model to emulate, did not mention (1) the defendants' principal places of business; (2) the Harmons'

Indiana citizenship (as opposed to their residence); or (3) that over $50,000 was at stake.

The Harmons did not immediately point out the omissions. Instead they engaged in discovery for almost two years. On August 9, 1995, however, after the district court dropped the case from the trial calendar and scheduled arguments on the defendants' motions for summary judgment—a subtle hint that the case might end in defeat without a trial—the Harmons suddenly "discovered" the omissions in the removal notice and sought remand back to state court.

Judge Hamilton denied the remand request and allowed Crown to amend its removal papers pursuant to 28 U.S.C. § 1653. He pointed out that the Harmons did not claim that diversity did not exist or that the amount in controversy was less than $50,000. Rather, the Harmons merely asserted that Crown failed to demonstrate those facts to a reasonable probability. Judge Hamilton then found that the omissions at issue were "procedural defects" and explained that under 28 U.S.C. § 1447(c), a motion to remand based on defects of this sort must be made within 30 days of removal. Finally, Judge Hamilton concluded that the record amply demonstrated that federal jurisdiction was proper at the time of removal. He noted that the Harmons' answers to interrogatories made clear that they had incurred over $55,-000 in medical expenses alone and that $80,-000 in lost wages were suffered by the time the case was removed.

On the same day he denied remand, Judge Hamilton resolved a number of evidentiary issues and granted summary judgment for Crown. He concluded the Harmons had not shown that any act or omission by Crown proximately caused the accident. Approximately 10 months later and based on a slightly different record, Judge Hamilton granted summary judgment for OKI. He again reasoned that the Harmons could not show proximate cause. We review the district court's conclusion that it had jurisdiction and its decisions to grant summary judgment, *de novo.*

The Harmons first argue that Judge Hamilton erred by declining to remand the case and allowing Crown to amend its removal

papers. The plaintiffs raise a bunch of arguments, all of which can be boiled down to two main themes. First, they contend the district court erred in finding that the omissions in Crown's notice were subject to § 1447's 30-day limit for challenging procedural defects. Second, they contend the district court erred by using *postremoval* evidence (i.e., answers to interrogatories) to determine whether jurisdiction was proper at the time of removal. Throughout both arguments the Harmons remind us that Crown admitted (at a hearing on the issue) it did not know the exact amount in controversy when the case started because Indiana rules bar plaintiffs from alleging a specific damage figure in their complaints.

■ Our first task is to pin down whether Crown's errors were procedural defects covered by § 1447(c) or instead omissions which reveal the absence of subject matter jurisdiction. See *In re Continental Cas. Co.*, 29 F.3d 292, 293 (7th Cir.1994). The only circuit to consider this issue has found that § 1447(c) covers any defects which do not go to the "question of whether the case could have been brought in federal district court." *In re Allstate Ins. Co.*, 8 F.3d 219, 221 (5th Cir.1993). Applying that definition, the Fifth Circuit held that a defendant's failure to allege citizenship as opposed to residency (one of Crown's errors) constituted a procedural defect. As the court put it, although the party failed "to *demonstrate* diversity, the record discloses no dispute that it in fact *existed*." *Id.* (emphasis in original). That seems logical, and Crown's omissions—like those in *Allstate*—did not undermine jurisdiction (as would have been the case, for example, if the Harmons were really Ohio citizens living in Indiana).

■ The question is, then, what evidence may the district court use to figure out whether jurisdiction actually existed at the time of removal. The Harmons say district courts are limited to the evidence in the record when removal is sought. In support, they cite *In re Shell Oil Co.*, 970 F.2d 355 (7th Cir.1992) (*per curiam*), which held that plaintiffs cannot defeat federal jurisdiction simply by filing postremoval affidavits stating they are seeking less than the jurisdic-

tional amount. In addition, our recent opinion in *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424 (7th Cir.1997), seems to lend some support to the Harmons' view. It states, the "court, however, is limited to examining only that evidence of the amount in controversy that was available at the moment the petition for removal was filed." *Id.* at 428 (citing *Shell*). Finally, the plaintiffs refer us to *Laughlin v. Kmart Corp.*, 50 F.3d 871 (10th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995). In that case the defendant removed a suit based on diversity jurisdiction, but did not mention the amount in controversy. Although the plaintiff never objected, the Tenth Circuit raised the jurisdictional issue *sua sponte* and ordered remand even though the defendant's jurisdictional brief made clear that the amount in controversy was "well above" $50,000. *Id.* at 873.

It would not be prudent to strictly limit a district court as the Harmons suggest. First, neither *Shell* nor *Chase* dealt with an attempt to amend defective allegations of jurisdiction under § 1653. Rather, in both cases, plaintiffs attempted to change the facts upon which jurisdiction was based. For example, in *Shell* the plaintiff tried to pull the rug out from under the district court by filing a postremoval stipulation that he would not seek to recover more than the jurisdictional amount. 970 F.2d at 356. The attempt to manipulate jurisdiction was even more transparent in *Chase*. In that case the plaintiff sued in state court, and the defendant removed. 110 F.3d 424–26. After her motion to remand was denied, the plaintiff voluntarily withdrew the suit. Two years later she refiled her complaint in state court, and the defendant once again removed the suit to federal court. The plaintiff moved to remand and, while her motion was pending, sought leave to amend her complaint to seek damages in an amount no greater than $49,999.99. We concluded that the district court correctly determined that federal jurisdiction was proper at the time of removal. *Id.* at 428. Second, should a court really be barred from considering reliable evidence (which has been gathered during nearly 2 years of dis-

covery) merely because the evidence was not in the record on the date of removal? The test should simply be whether the evidence sheds light on the situation which existed when the case was removed. Finally, although it appears the Harmons were trying to forum shop—they pulled the rip cord when the district court scheduled arguments on the summary judgment motions—what did they hope to accomplish? Any court would, we think, reach the same result reached by Judge Hamilton, whose opinion on the merits, for the reasons that follow, is unassailable.

The Harmons claim the district court impermissibly weighed the evidence and disregarded a dispute over whether the Rider was stopped when Harmon dismounted. They also claim the district court erred by failing to realize that proximate cause is always a jury question. Finally, they assert that an affidavit submitted by their expert, Jack Winsor, created a dispute over whether proximate cause had been shown.

Judge Hamilton properly concluded that any dispute over whether the Rider was still moving at the time of the accident was immaterial. If the Rider was stopped—as the evidence outlined in the judge's opinion seems to indicate—the Harmons cannot get past summary judgment unless they point to some evidence either that a defect caused it to spontaneously move or that a warning could have prevented the injury. They haven't done so. The brakes were working properly all morning and again after the incident. (Harmon had to disengage them, you recall, to drive away from the wall).

If, on the other hand, the forklift was still moving, no warning would have prevented the accident. The Harmons claim Crown should have warned them that a moving Rider can travel up to 8 feet after the brakes are engaged. However, Harmon admitted that he *had been warned* and *knew* not to jump off a moving forklift. He had used forklifts for 19 years and had to realize that a 7000 lb. vehicle would travel a short distance after the brakes were applied.

■ Finally, Winsor's affidavit does not get the Harmons over the hump. The Harmons rely on a single sentence, which opines that "failure to incorporate an adequate warning device and have adequate warnings on the rider ... was a proximate cause of injury to Mr. Harmon." Without any evidence in the record to support that (legal) conclusion, Winsor's statement simply is not enough to get the Harmons' claims against Crown to the jury. *See Buckner v. Sam's Club, Inc.*, 75 F.3d 290 (7th Cir.1996) (summary judgment appropriate where, despite an expert's opinion to the contrary, the undisputed facts would not allow a reasonable jury to infer proximate cause).

The Harmons also allege OKI negligently maintained the Rider. They point out that OKI serviced the forklift monthly from November 1988 to December 1990 but not during the 6 months before the accident. The Harmons contend summary judgment was inappropriate against OKI because: (1) OKI's motion failed to contain a statement of undisputed facts as required by local rules; and (2) Judge Hamilton improperly struck Winsor's statement that the Rider had been used for 338 hours without being serviced and that service should be performed every 100 hours.

■ The lack of proximate cause is even more glaring in OKI's case. OKI submitted, in admissible form, the results of a postaccident inspection of the Rider's brakes. Everything checked out just fine. If the evidence was undisputed that the brakes worked properly both before and after the accident, how can the Harmons prevail on a negligent maintenance claim? Additionally, it was not an abuse of discretion for the judge to strike the expert's statement that the Rider had not been serviced for 338 hours. The assertion was based on an OKI employee's statement that OKI had not serviced the Rider—there was no evidence to suggest that Cummins had not checked over the forklift. (Although Judge Hamilton excluded the statement as hearsay, one of OKI's employees stated that Cummins agreed to take over maintenance of the Rider in December 1990). However, even if the affidavit were correct, it is meaningless in the absence of some evidence that the failure to perform maintenance led to worn or defec-

tive brakes. The Harmons have no such evidence.

Finally, Judge Hamilton rejected the Harmons' claim that the Southern District's local rule 56.1 knocked out OKI's brief in support of its summary judgment motion. The decision to keep the brief in the case was not an abuse of discretion. *See Little v. Cox's Supermarkets,* 71 F.3d 637, 640 (7th Cir.1995) ("[I]t is clear that the decision whether to apply the rule strictly or to overlook any transgression is one left to the district court's discretion."). Rule 56.1 requires, among other things, a statement of undisputed material facts, and it's true that OKI didn't include one. However, the rule is designed to let the court and the opposing party know what legal and factual issues are on the table. Neither the court nor the Harmons could have been confused. OKI's brief was only 3–pages long, and the few assertions of fact in it were found in a 3–page affidavit and a 14–page excerpt from a deposition. There was certainly no prejudice from this technical failure.

AFFIRMED.