Lawrence E. HELLER, Plaintiff,

v.

ALLIED TEXTILE COMPANIES LIMITED, Defendant.

No. 03–CV–81–B–S.

United States District Court,
D. Maine.

July 28, 2003.

Glenn Israel, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, for Lawrence E. Heller.

Adam C. Paul, Kirkpatrick & Lockhart LLP, Washington, DC, U. Charles Remmel, II, Kelly, Remmel & Zimmerman,

Portland, ME, for Allied Textiles Companies Limited.

## ORDER

SINGAL, Chief Judge.

The former president and chief executive officer of a woolen mill seeks damages from the mill's parent company for breach of contract and violation of Maine wage statutes. Presently before the Court are Plaintiff's Motion to Remand (Docket # 4) and Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and For Failure to State a Claim (Docket # 7). For the following reasons, the Court DENIES Plaintiff's motion and GRANTS Defendant's motion.

### I. LEGAL STANDARD

As this case involves disputes regarding both subject matter and personal jurisdiction, the Court first sets forth the different legal standards appropriate in each jurisdictional context. Subject matter jurisdiction represents a threshold issue where removal from state court is contested. *Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 4 (1st Cir.1999). The removing party bears the burden of making a "colorable" showing of the underlying jurisdictional basis. *Id.*

However, Plaintiff bears the burden of making a prima facie showing of jurisdiction over Defendant if the Court proceeds without holding an evidentiary hearing when ruling on a motion to dismiss for lack of personal jurisdiction. *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 618 (1st Cir.2001); *Nowak v. Tak How Invs., Ltd.,* 94 F.3d 708, 712 (1st Cir.1996). Under the prima facie standard, Plaintiff must cite to specific evidence in the record demonstrating the relevant jurisdictional facts. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 51

(1st Cir.), *cert. denied,* 537 U.S. 1029, 123 S.Ct. 558, 154 L.Ed.2d 444 (2002). The Court accepts sufficiently supported facts as true and views them in the light most favorable to Plaintiff. *Daynard,* 290 F.3d at 51. The Court must also accept as true any uncontested facts put forward by Defendant. *Id.*

## II. BACKGROUND

Plaintiff Lawrence Heller ("Heller") is the former President and Chief Executive Officer ("CEO") of Carleton Woolen Mills, Inc. ("Carleton"). Heller resides in Pennsylvania. Carleton is a Delaware corporation with its principal place of business in Winthrop, Maine that designs, produces and markets woven woolen fabrics. By contract dated August 23, 1995, Heller agreed to serve as an officer and employee of Carleton. Carleton, in return, agreed to pay Heller an annual salary of $180,000 for the first year of the contract and at least $200,000 each fiscal year thereafter in addition to providing vacation, benefits, annual bonuses and a company automobile. The contract was negotiated and executed in New York and is subject to a New York choice of law provision. Although all of Carleton's production facilities were located in Maine, its design and marketing headquarters, as well as the CEO's primary place of work, were in New York. Carleton employed twenty-one people in the New York office and hundreds of individuals in its Maine mills. The facilities worked in close cooperation and required daily contact.

Carleton's parent corporation, Defendant Allied Textile Companies, Plc. ("Allied"), is a private company with its principal place of business in West Yorkshire, England. In 1994, prior to the execution of the contract, Allied purchased all of Carleton's stock, making it a wholly owned subsidiary. Presumably as a result of its ownership status, Allied also signed the employment agreement. However, the nature of the parent corporation's rights and duties under the document are less clear than those of Heller and Carleton. While the preamble states that the agreement is between Carleton and Heller, without mention of Allied, the contract appears to provide three rights to Allied's benefit. Heller must report to a designated Allied "liaison officer" as well as perform any duties assigned by that individual under the terms of the agreement. In addition, all notices under the contract are to be addressed to Allied.[1] The parent company does not appear to have incurred any duties from the face of the employment contract.

Allied is a textile holding company that employs seven people in England and does not have any offices in the United States. Carleton is one of seventeen Allied subsidiaries. Derek Wood ("Wood"), the Allied liaison officer described in the contract, monitored the parent corporation's investment in Carleton. He traveled to Carleton's facilities approximately nine or ten times a year and generally visited both the New York and Maine facilities over the course of a three-day trip. Other Allied employees infrequently visited the Carleton sites. Approximately ten percent of Wood's efforts on behalf of Allied were dedicated to Carleton. Additionally, Wood and another Allied employee sat on the Carleton Board of Directors and engaged in telephonic and facsimile contact with Carleton management from the United Kingdom.

---

1. The employment contract is also inconsistent with respect to this point. The agreement calls for notices to the "Company" to be addressed to Allied, but defines the "Company" as Carleton.

In January of 1998, financial conditions at Carleton began to deteriorate. Carleton's declining fiscal state necessitated significant borrowing from Allied to continue operations. Having invested more than $25 million in the subsidiary, Allied ceased financing Carleton operations on December 10, 1999. Approximately two months later, Carleton filed for bankruptcy. Carleton then stopped paying Heller's full salary, although he continued to receive a portion of his salary until September 2, 2000 when the bankruptcy proceeding was converted to liquidation.

Heller brought suit against Allied on April 2, 2003 in the Superior Court for Kennebec County, alleging three causes of action based on the employment agreement and Allied's "joint employer" status with Carleton. Count I seeks damages for breach of contract resulting from the failure to pay Heller's salary and benefits. Count II alleges a failure to make timely payment of wages in violation of 26 M.R.S.A. § 621–A (Supp.2003).[2] Count III brings a cause of action pursuant to 26 M.R.S.A. § 626 (Supp.2003) for failure to pay all wages due upon cessation of employment.

Defendant received a copy of the complaint on April 10, 2003. On May 8, 2003, Defendant attempted to remove the action to this Court (Docket # 1). Realizing that it had improperly cited to the bankruptcy removal statute in the original notice of removal, however, Defendant filed a praecipe on May 16, 2003 to amend the notice (Docket # 3). Plaintiff objected and filed a motion to remand to state court on May 21, 2003 (Docket # 5). Additionally, on June 12, 2003 Defendant filed a motion to dismiss for lack of personal jurisdiction and failure to state a claim (Docket # 7).

Both the motion to remand and the motion to dismiss were argued at a motions hearing before the Court on July 9, 2003.

## III. DISCUSSION

Because subject matter jurisdiction represents a threshold determination the Court first addresses Plaintiff's motion to remand. Finding removal proper in the instant case, the Court then proceeds to rule on Defendant's motion to dismiss.

### A. Motion to Remand

Plaintiff challenges the sufficiency of Defendant's original notice of removal in this case. Defendant first attempted to remove the matter pursuant to the bankruptcy removal statute, 28 U.S.C. § 1452(a) (1994), but now concedes that the Court does not have bankruptcy jurisdiction. As a result, Defendant seeks to amend its notice to reflect diversity of citizenship under 28 U.S.C. § 1332 (Supp. 2003) and remove pursuant to 28 U.S.C. § 1441(a) (1994).

Section 1441(a) permits removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Under section 1332(a), in turn, courts have original jurisdiction over cases brought in diversity. Diversity of citizenship jurisdiction extends to all civil controversies exceeding $75,000 in value between "citizens of a State and citizens or subjects of a foreign state." § 1332(a)(2). For the purposes of diversity, the phrase "citizens or subjects of a foreign state" includes a corporation of a foreign state. *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.,*

---

**2.** Plaintiff's complaint actually alleges a cause of action under the repealed provision 26 M.R.S.A. § 621. However, Plaintiff's counsel acknowledged the applicability of section 621–A at oral arguments.

536 U.S. 88, 91, 122 S.Ct. 2054, 153 L.Ed.2d 95 (2002).

Under 28 U.S.C. § 1446(a) (1994), the removing party must file with the federal court "a notice of removal . . . containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings and orders served upon such defendant." The provision imposes the additional requirement that the notice be filed within thirty days of receipt of proper service of the complaint and summons by Defendant.[3] § 1446(b); *Danca*, 185 F.3d at 4 (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350–51, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999)).

■ Failure to follow the removal procedures set forth in section 1446 invokes the remand provisions of 28 U.S.C. § 1447(c) (Supp.2003). Section 1447(c) allows for the filing of a motion to remand within thirty days of the notice of removal "on the basis of any defect in removal procedure." Additionally, remand at the Court's own initiative is appropriate at any point prior to final judgment if it appears that subject matter jurisdiction is lacking. § 1447(c). The removal statutes are strictly construed. *Danca*, 185 F.3d at 4 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941)).

Plaintiff argues that the praecipe was untimely under section 1446(b) because the amendment was filed more than thirty days after Defendant's receipt of proper service. As a result, Plaintiff maintains that the original notice of removal fails to adequately provide "a short and plain statement of the grounds for removal" as required under section 1446(a) and is subject to remand pursuant to section 1447(c) due to a "defect" in removal procedure. Defendant responds that the intended assertion of diversity jurisdiction is clear from the face of the complaint attached to the original notice.[4] Defendant further contends that the Court may permit a removing party to amend technical defects in the removal notice after the expiration of the thirty-day period, provided the party does not seek to substitute entirely new grounds for removal.

■ A procedural defect for the purposes of section 1447(c) is "any defect that does not go to the question of whether the case originally could have been brought in federal district court." *In re Allstate Ins. Co.*, 8 F.3d 219, 221 (5th Cir.1993) (internal citations omitted); *see also Harmon v. OKI Sys.*, 115 F.3d 477, 479 (7th Cir.1997) (adopting the definition put forth by Fifth Circuit). Pursuant to 28 U.S.C. § 1653 (1994), however, "defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." Courts have generally allowed defendants to amend petitions for removal pursuant to section 1653 even after the passage of the thirty-day period prescribed by section 1446, provided the amendments are neces-

---

3. The Court notes that proper service of process occurred in this case when Defendant's lawyer signed and returned the acknowledgement form for service by mail pursuant to Maine Rule of Civil Procedure 4(c)(1). *Ford v. Nationwide Mut. Fire Ins. Co.*, No. Civ. 01–133–P–H, 2001 WL 667834, at *1 (D.Me. June 13, 2001). Because the record is silent on this point and the parties appear to agree that proper service was effectuated on April 10, 2003, the Court also assumes proper service on that date for the purposes of 28 U.S.C. § 1446(b) (1994).

4. The complaint in this matter alleges that Plaintiff is an individual who "resides in Langhorne, Pennsylvania" and that Defendant "is a private company with a principal place of business in West Yorkshire, England." It also alleges that Defendant owes Plaintiff $800,000 in unpaid salary.

sary to correct defective allegations of jurisdiction. *See N. Ill. Gas Co. v. Airco Indus. Gases,* 676 F.2d 270, 273 (7th Cir. 1982).

A defective allegation of jurisdiction occurs where amendment is necessary to "set forth more specifically the jurisdictional grounds for removal which were imperfectly stated in the original petition." *Wormley v. S. Pac. Transp. Co.,* 863 F.Supp. 382, 385 (E.D.Tex.1994). Thus, defective allegations may be amended under section 1653 as long as the provision is not employed to produce jurisdiction where none actually existed. *Ryan v. Dow Chem. Co.,* 781 F.Supp. 934, 939–40 (E.D.N.Y.1992). If no hint of the amended jurisdictional basis is evident in either the original notice or any attached pleadings, courts will not permit amendment under section 1653. *See Smiley v. Citibank (S.D.), N.A.,* 863 F.Supp. 1156, 1162 (C.D.Cal.1993). Rather, the section 1653 remedy is limited to building upon an already extant jurisdictional foundation. *Id.; see also* 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3733 (3d ed.1998).

As a result, "failure to cite the proper [statutory] section in a petition for removal is not a fatal defect where an adequate basis of removal is set forth." *Wormley,* 863 F.Supp. at 385; *see also Hayduk v. United Parcel Serv., Inc.,* 930 F.Supp. 584, 592 (S.D.Fla.1996); *Ryan,* 781 F.Supp. at 940. However, courts are inconsistent regarding the proper scope of materials to be examined when determining whether an adequate basis for removal is set forth in the original notice. *Compare N. Ill. Gas Co.,* 676 F.2d at 273 (reviewing the entire state court record, including complaint), *Ellerbee v. Union Zinc, Inc.,* 881 F.Supp. 162, 164 (E.D.Pa. 1995) (same) *and Ryan,* 781 F.Supp. at 940 (same) *with Laughlin v. Kmart Corp.,* 50 F.3d 871, 873 (10th Cir.1995) (limiting the scope of the remand inquiry to the face of the original notice of removal) *and Energy Catering Servs., Inc. v. Burrow,* 911 F.Supp. 221, 223 (E.D.La.1995) (same).

In keeping with precedent from this District, the Court elects to look beyond the face of the original notice to the accompanying complaint to establish removal jurisdiction in the present case. *Kingman v. Sears, Roebuck & Co.,* 526 F.Supp. 1182, 1185 (D.Me.1981); *see also Danca,* 185 F.3d at 4 ("Jurisdiction is normally ascertained from the face of the state court complaint that triggered the removal."). The *Kingman* court granted leave to amend a notice of removal *nunc pro tunc,* noting that it is "[b]etter, if the jurisdiction in fact exists, to permit the petition to be amended to reflect it" and that prohibiting amendment "would tend to unduly exalt form over substance." *Kingman,* 526 F.Supp. at 1185 n. 12, 1186 (internal citations omitted). Here, it is clear from the face of Plaintiff's complaint that diversity jurisdiction existed at the time of removal.[5] Consequently, Defendant has alleged sufficient grounds for removal to permit amendment under section 1653. Noting the absence of prejudice to Plaintiff, the Court therefore accepts Defendant's amended notice.

---

[5]. The Court is aware that allegations of residency are insufficient to establish citizenship for the purposes of 28 U.S.C. § 1332(a) (Supp.2003). *McMahon v. Bunn–O–Matic Corp.,* 150 F.3d 651, 653 (7th Cir.1998). However, Plaintiff's citizenship at the time of removal was established at oral argument, assuaging any doubts regarding the necessary jurisdictional foundation. *See Sierminski v. Transouth Fin. Corp.,* 216 F.3d 945, 949 (11th Cir.2000) (permitting post-removal consideration of jurisdictional evidence relevant to the time of removal).

### B. Motion to Dismiss

Defendant contends that dismissal of the present matter is proper for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, or, in the alternative, for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Because the Court finds personal jurisdiction lacking, it does not reach Defendant's alternative Rule 12(b)(6) argument.

The personal jurisdiction of a federal court sitting in diversity is equivalent to that of a state court sitting within the forum. *Nowak*, 94 F.3d at 712. Thus, to establish personal jurisdiction over Defendant, Plaintiff must demonstrate both that Maine's long-arm statute grants jurisdiction and that exercise of jurisdiction under the statute is consistent with the Due Process Clause of the United States Constitution. *Daynard*, 290 F.3d at 52. Because Maine's long-arm statute is coextensive with the permissible exercise of personal jurisdiction under the Constitution, the due process inquiry controls in the present case. *See* 14 M.R.S.A. § 704–A (Supp.2003); *Murphy v. Keenan*, 667 A.2d 591, 593 (Me.1995). Two means of establishing jurisdiction over Defendant's person are available under the Fourteenth Amendment: specific and general jurisdiction. The Court addresses each in turn.

### 1. Specific Jurisdiction

Specific personal jurisdiction is appropriate provided Defendant's forum-based contacts gave rise to Plaintiff's cause of action. Consistent with this central tenet, due process requires that three conditions be met before the Court may exercise jurisdiction over Defendant's person: (1) the claim underlying the litigation must directly relate to or arise out of Defendant's contacts with the forum; (2) those contacts must constitute purposeful availment of the benefits and protections afforded by Maine's laws; and (3) jurisdiction must be reasonable in light of a number of factor's touching upon fundamental fairness. *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir.1999).

The relatedness inquiry is shaped by the nature of Plaintiff's claims. *Phillips Exeter*, 196 F.3d at 290–91. Plaintiff must demonstrate a nexus between Defendant's contacts with Maine and his own causes of action. *Swiss Am. Bank*, 274 F.3d at 621. In the instant case, Plaintiff alleges breach of employment contract, untimely payment of wages under 26 M.R.S.A. § 621–A and failure to pay wages upon cessation of employment pursuant to 26 M.R.S.A. § 626. Because the Court must segregate the relatedness analysis by claim, it first examines Plaintiff's breach of contract action and then considers the statutory claims. *Mass. Sch. of Law v. ABA*, 142 F.3d 26, 35 (1st Cir. 1998).

Defendant's contacts with the forum must be instrumental to the formation, performance or breach of the August 25, 1995 employment contract. *See Phillips Exeter*, 196 F.3d at 289; *Telford Aviation, Inc. v. Raycom Nat'l, Inc.*, 122 F.Supp.2d 44, 46 (D.Me.2000). The existence of the contract alone is insufficient to establish minimum contacts with the forum. *Swiss Am. Bank*, 274 F.3d at 621 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Rather, the Court must examine prior negotiations and contemplated future consequences of the contract in addition to the parties' actual course of dealing. *Id.* In order to carry its burden, Plaintiff must produce "evidence of specific facts set forth in the record" and "go beyond the pleadings and make

affirmative proof." *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp. ("Pleasant St. II")*, 987 F.2d 39, 44 (1st Cir.1993) (internal citations omitted).

Plaintiff argues that it has successfully demonstrated that Defendant's management decisions ultimately resulted in the alleged breach of the employment agreement. He essentially argues that Carleton was a mere intermediary and that Defendant represented his employer and was responsible for payment under the agreement.[6] Defendant counters that, despite its involvement with the forum, neither the formation nor breach of the contract were related to its Maine contacts.

At the outset, the Court notes that Defendant's status as a party to the contract is disputed. Moreover, the exact nature of any rights and obligations incurred by Defendant pursuant to the agreement is murky at best. In light of the rights assigned to Allied on the face of the contract and the corporation's signatory status, however, the Court gives Plaintiff the benefit of the inference that Defendant is indeed a party to the employment agreement. The Court does not attempt to parse the language of the agreement at this juncture and assumes that at least some liability attaches to Defendant under the contract.

Even assuming the existence of a binding contract between the parties, Plaintiff has failed to present specific facts sufficient to support a prima facie showing of related contacts. Central to Plaintiff's breach of contract action is Defendant's obligation, and subsequent failure, to pay pursuant to that agreement. Thus, contacts between Allied and Carleton or Allied and Maine are relevant only to the extent that they color Allied's agreement to pay Heller. Here, the bulk of the evidence adduced by Plaintiff speaks only to Allied's de facto management of Carleton and sheds no light on Allied's forum-based obligations under the contract.[7] At the July 9 hearing the tenuous nature of the relevant jurisdictional facts became evident. When pressed, Plaintiff ultimately argued that only two alleged forum contacts were relevant to the agreement: Defendant's failure to provide him with notice of termination and its failure to pay him in accordance

**6.** Plaintiff, however, makes no allegations that Carleton served as Allied's agent or that Carleton's actions can otherwise be imputed to Allied. As such, the Court only examines Allied's own contacts with the forum for the purposes of both specific and general personal jurisdiction.

**7.** Plaintiff's arguments for personal jurisdiction largely represent an effort to conform the facts of a related bankruptcy proceeding to the requisites of the present dispute. Rather than cull out materials helpful to the contract-specific analysis required in the instant case, Plaintiff simply deposited a large portion of the bankruptcy record with the Court and relies on factual citations tending to show Defendant's effective control over Carleton. Although the bankruptcy court found that these contacts with Maine were sufficient to support personal jurisdiction, the bankruptcy proceeding did not involve the employment contract presently at issue. The underlying cause of action before the bankruptcy court was a claim for severance pay brought against Allied as an employer under 26 M.R.S.A. § 625–B (Supp.2003). Section 625–B defines an employer as "any person who directly or indirectly owns and operates a covered establishment." Thus, while Allied's control over Carleton may be relevant to an action pursuant to section 625–B, it is not determinative of the analysis appropriate for the claims at issue here. *See Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik GmbH*, 295 F.3d 59, 64 (1st Cir.2002) (" 'Claim' or 'cause of action' usually refers to an abstract legal theory for recovery; but in deciding whether specific jurisdiction exists, the legal theory advanced is important primarily to tell us what alleged *conduct* matters to the case at hand.") (emphasis in the original).

with the contract. *See Phillips Exeter,* 196 F.3d at 291 (noting that the location of a failure to make payment is relevant to the jurisdictional analysis). However, Plaintiff also acknowledged that he could not cite to specific evidence in the record indicating that these events occurred in Maine. He instead asked the Court to recognize their in-forum occurrence by "negative inference."[8]

Under the facts of the present case, the relevant notice of termination and paychecks are just as likely to have issued from New York or the United Kingdom. Although replete with references to running a mill in Maine, the record contains no evidence regarding executive compensation or termination practices. Without some affirmative evidence buttressing Plaintiff's claimed jurisdictional facts, the Court cannot infer a forum-based breach. *Mass. Sch. of Law,* 142 F.3d at 26. As the parties do not dispute that the contract was negotiated and executed in New York and Plaintiff has presented no evidence regarding other Maine-based performance under the employment agreement, no indications exist that Plaintiff's contract claim arose out of or was directly related to Defendant's contacts with the forum. Thus, the Court finds that Plaintiff has not carried its prima facie burden under the relatedness test, thereby foreclosing the exercise of personal jurisdiction over the contract claim.

Similarly, Maine-based contacts relating to Plaintiff's statutory claims are absent from the jurisdictional record. Section 621–A mandates the timely payment of wages.[9] Section 626 requires that a terminated employee "must be paid in full within in a reasonable time after demand at the office of the employer where payrolls are kept and wages are paid . . . ." Again, assuming Defendant's party status under the contract, the jurisdictional record does not indicate that the failure to pay occurred in or related to Maine. *See Phillips Exeter,* 196 F.3d at 291; *cf. Burke v. Port Resort Realty Corp.,* 1998 ME 193, ¶ 5, 714 A.2d 837, 839 ("The employment agreement, not section 626, governs how wages are earned and, if specified, when wages are to be paid."). Consequently, Plaintiff has also failed to meet his prima facie burden with respect to the relatedness of the statutory claims. The Court, therefore, does not reach the purposeful availment and reasonableness prongs of the specific jurisdiction analysis.

2. General Personal Jurisdiction

 Personal jurisdiction may also attach to forum-based activities unrelated to the claims alleged in Plaintiff's complaint. *Noonan v. Winston Co.,* 135 F.3d 85, 89 (1st Cir.1998). In order to establish general jurisdiction, Plaintiff must make two showings: (1) that "continuous and systematic general business contacts" exist between Defendant and Maine; and (2) that the exercise of jurisdiction over Defendant is reasonable. *Swiss Am. Bank,* 274 F.3d at 619 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). The general jurisdiction con-

---

**8.** Plaintiff asks the Court to make this inference on the basis of nine pages of his deposition testimony. The testimony focuses on the relationship between Carleton sales, marketing and styling in New York and production and design in Maine but does not mention executive compensation or employment practices at Carleton or Allied.

**9.** At oral argument, Plaintiff actually conceded that the section 621–A claim was no longer viable in light of 26 M.R.S.A. § 623 (Supp.2003) (providing that section 621–A "do[es] not apply to . . . salaried employees . . ."). Because the Court finds personal jurisdiction lacking in this matter, however, it does not address the merits of Plaintiff's claims.

tacts analysis is "considerably more stringent than that applied to specific jurisdiction questions." *Swiss Am. Bank,* 274 F.3d at 619 (quoting *Noonan,* 135 F.3d at 93). In addition, even greater caution must be displayed where a plaintiff seeks to exercise jurisdiction over a foreign national. *Noonan,* 135 F.3d at 93 (citing *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). To determine whether contacts are sufficiently continuous and systematic, the Court must look to the specific contacts alleged and compare them with the quality and quantity of contacts deemed sufficient in other cases. *Swiss Am. Bank,* 274 F.3d at 620.

Plaintiff argues that Allied's intimate involvement in the day-to-day management of Carleton's Maine mills is sufficient to subject it to general jurisdiction. He points to the almost monthly visits of Allied employee Derek Wood to address management details such as bonus accruals, insurance renewals, personnel issues, lay-offs and production schedules. Plaintiff further emphasizes the frequent telephonic and facsimile communications between Wood and Carleton employees in Maine, Allied oversight and approval of Carleton capital expenditures, the presence of two Allied employees on Carleton's board and Allied control of Carleton's financial and credit arrangements, including substantial cash infusions directly from Allied. The alleged contacts fall short, however, of the general jurisdiction mark.

In *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.* *("Pleasant St. I"),* 960 F.2d 1080, 1088 (1st Cir.1992), the First Circuit found insufficient contacts to support general jurisdiction where employees of a wholly-owned and forum-based subsidiary sued a foreign parent corporation. The plaintiffs established that the defendant parent corporation appointed the subsidiary's directors from among its own ranks, appointed and paid its own employees to serve as the president, CEO and treasurer of the subsidiary, directed the subsidiary's finances and fiscal affairs and advanced approximately $8 million in various subsidies to the subsidiary. *Pleasant St. I,* 960 F.2d at 1088. The parent corporation was headquartered and incorporated in Scotland and maintained all contacts with the forum solely in relation to its subsidiary. The *Pleasant St. I* court determined that the above "contacts are manifestly insufficient to ground a claim of general jurisdiction." [10] *Id.; see also Swiss Am. Bank,* 274 F.3d at 620 (collecting general jurisdiction contact analyses). Similarly, Plaintiff has demonstrated only that Allied's sole connection to Maine is through its forum-based subsidiary. As such, Plaintiff's prima facie showing fails to rise to the level of continuous and systematic contacts and the Court does not address the reasonableness of exercising general jurisdiction in this case.

## IV. CONCLUSION

For the foregoing reason, the Court DENIES Plaintiff's Motion to Remand and GRANTS Defendant's Motion to Dismiss.

SO ORDERED.

---

**10.** Plaintiff is correct in questioning the application of *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp. ("Pleasant St. I"),* 960 F.2d 1080 (1st Cir.1992) in light of the later *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp. ("Pleasant St. II"),* 987 F.2d 39 (1st Cir.1993). However, *Pleasant St. II* modifies only the specific jurisdiction analysis espoused in *Pleasant St. I* and does not affect the holding of the earlier case with regard to general jurisdiction. *See Pleasant St. II,* 987 F.2d at 45 (finding that new evidence adduced was sufficient to establish purposeful availment).