**Joseph ARANCIO, Plaintiff,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA and Prudential Long Term Disability Conversion Insurance Trust, Defendants.**

**No. 01 Civ. 12737(GEL).**

United States District Court, S.D. New York.

Aug. 7, 2002.

334

Frank P. Winston, of counsel, Wilkofsky Friedman Karel & Cummins, New York City, for plaintiff Joseph Arancio.

Julie M. Vales, Cuyler Burk, LLP, New York City, for defendants The Prudential

Insurance Company of America and Prudential Long Term Disability Conversion Insurance Trust.

## OPINION AND ORDER

LYNCH, District Judge.

Plaintiff Joseph Arancio brought this action in New York County Supreme Court on November 28, 2001, seeking disability benefits under a contract of insurance issued by defendants Prudential Insurance Company of America and Prudential Long Term Disability Conversion Insurance Trust (collectively "Prudential"). On December 28, 2001, Prudential removed the case to this Court, asserting that the underlying claims are governed by federal law, specifically, the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* On March 8, 2002, plaintiff filed a Demand for Trial by Jury. About a month later, on April 12, 2002, Prudential moved to strike the jury trial demand arguing both that it was untimely and that ERISA plaintiffs are not entitled to jury trials. On the same day, plaintiff cross-moved for remand to state court, arguing that his claims are not governed by ERISA and that federal question jurisdiction is lacking. For the reasons stated below, plaintiff's motion is granted, defendants' motion is denied as moot, and the case is remanded to New York County Supreme Court.

## BACKGROUND

From October 1993 until October 1999, Arancio was employed by Riverbay Corporation ("Riverbay"). Prior to leaving Riverbay, he participated in an employer-sponsored group disability plan offered by Prudential. Under that plan, employees had the option of converting to individual conversion policies with Prudential after their employment with Riverbay ceased. On October 29, 1999, Arancio's employ-

ment with Riverbay ended (Pl.Aff.¶ 7), and the following day, he converted his group disability plan to an individual policy (the "Conversion Policy") (*id.* ¶ 8). On January 18, 2000, Arancio filed a disability claim with Prudential. (*Id.* ¶ 10.) Prudential denied plaintiff's initial claim and his subsequent administrative appeal. (*Id.* ¶¶ 10–11.) In this action, Arancio continues to seek those benefits.

## DISCUSSION

### A. Federal Question Jurisdiction

■ The essential issue before the Court is whether the Conversion Policy is governed by ERISA, and accordingly, whether this case properly presents a federal question.

■ ERISA governs "any employee benefit plan if it is established or maintained ... by any employer." 29 U.S.C. § 1003 (1999). An employee welfare benefit plan is defined as "any plan, fund, or program ... established or maintained by an employer." 29 U.S.C. § 1002(1) (1999). There is no dispute that the group disability plan in which Arancio participated during his employment at Riverbay was such a plan, and that claims under it would have been subject to federal jurisdiction. *See* 29 U.S.C. § 1144(a) (1999). There is also no dispute that Arancio's right under that plan to convert to an individual policy was also governed by ERISA. The Second Circuit has held that the notice process relating to such conversion rights cannot be regulated by state law, since such laws would regulate the actual content of an employee benefit plan. *Howard v. Gleason Corp.*, 901 F.2d 1154, 1158 (2d Cir. 1990). ERISA aims to relieve employers of the administrative burden of complying with conflicting state and local regulations. *See, e.g., Fort Halifax Packing Co., Inc., v. Coyne*, 482 U.S. 1, 9–11, 107 S.Ct. 2211, 96

L.Ed.2d 1 (1987) (discussing the purpose of ERISA preemption). Thus, plans administered by employers, including those aspects of employee benefits that permit conversion, are governed by uniform federal law, and state laws regulating the right to convert are preempted.

The situation presented here is quite different. The parties do not dispute that Arancio had and exercised a right to convert, nor do they dispute that he now has a policy with the defendants. Now that Arancio has exercised his conversion right, the policy he holds is the same as any other individual policy. The Conversion Policy names Prudential, not the employer, as the administrator of claims. (Pl. Aff.¶ 9.) Riverbay no longer finances the policy as it did under the group insurance plan. Instead, Arancio pays the premiums. (Pl. Aff. Ex. 2 at 7–8.) Since the filing of plaintiff's disability claim, all communication regarding the claim has been between Arancio and Prudential, and not between Arancio and his former employer. (Pl.Aff.¶ 14.) In effect, the whole point of the conversion right is precisely to permit the employer to *convert* from participation in the employer's group plan to an individual insurance policy.

■ Arancio now has an independent relationship with Prudential, formed when he converted from his previous employer-sponsored plan. Such a relationship is not governed by ERISA. Accordingly, the controversy does not support federal question jurisdiction.

**B.** *Diversity Jurisdiction*

In their notice of removal, defendants asserted only federal question jurisdiction. However, in their briefs submitted on the current motions, Prudential claims that this action is properly before the Court on diversity grounds as well. (Def. Mem. at 19.) At the Court's request, the parties submitted additional briefing on July 23, 2002, to address whether or not this Court should exercise diversity jurisdiction. Neither party appears to dispute that the parties are citizens of different states, although plaintiff skirts the issue in his letter brief. (Defs. Letter Brief at 3; Pl. Letter Brief at 2.) For purposes of this order, the Court will assume that diversity exists.

The parties approach the diversity question from different angles, each seeking to profit from the other's alleged procedural defaults. Plaintiff would have us consider whether the defendants can amend their petition for removal and add an entirely new ground once the statutory time for filing a removal petition has lapsed. (Pl. Letter Brief at 2.) Defendants, although they initially ask the same question (Defs. Letter Brief at 2), reframe the issue as whether the plaintiff can move to remand for defective removal after the statutory time for such a motion has expired (*id.* at 2–4).

■ Plaintiff's procedural lapse, if lapse it was, is more easily overlooked. It is true that a plaintiff ordinarily may not raise a non-jurisdictional removal defect after 30 days. 28 U.S.C. § 1447(c) (1999). But this familiar rule is inapplicable here for several reasons. First, plaintiff is not seeking a remand because of any technical defect in the removal notice. Plaintiff's objection to Prudential's belated assertion of diversity jurisdiction is not the basis for his motion to remand; it is simply an effort to prevent Prudential from amending its original notice. Nor is Prudential's failure to raise the diversity issue in its notice of removal a defect in that notice, jurisdictional or otherwise. The notice was technically sound, raising a basis for removal—federal question jurisdiction under ERISA—that would have justified removal if correct. Second, plaintiff can

hardly be faulted for failing to object in a timely matter to a jurisdictional claim that Prudential had not yet made. Plaintiff promptly made its objection as soon as Prudential sought to switch horses from federal question to diversity jurisdiction. It is difficult to see how a rule prohibiting untimely amendment of removal notices could be enforced if plaintiffs seeking to raise the issue are deemed in turn to have filed inevitably untimely non-jurisdictional remand motions.

 Defendant's maneuver falls more directly afoul of a procedural rule. A notice of removal may not be untimely amended to add a "new avenue of jurisdiction." *See, e.g., Funeral Fin. Sys., Ltd. v. Solex Express, Inc.,* 01 Civ. 6079(JG), 2002 WL 598530 at *19–21 (E.D.N.Y. April 11, 2002). This rule prevents manipulation of jurisdiction, for example, by changing one's state of residence in order to create diversity. *See, e.g., CBS, Inc. v. Snyder,* 762 F.Supp. 71, 76 (S.D.N.Y.1991). Although a removing party may be given leave to cure a defective ground for removal under 28 U.S.C. § 1653 barring a "'total absence of jurisdictional foundations,'" *see, e.g., Grow Group, Inc. v. Jandernoa,* 94 Civ. 5679(RPP), 1995 WL 60025 (S.D.N.Y. Feb. 10, 1995) (quoting *CBS,* 762 F.Supp. at 76), such amendments are in the court's discretion and are intended to preserve jurisdiction where it exists but was *defectively stated. See, e.g., Cox v. Livingston,* 407 F.2d 392, 393 (2d Cir. 1969). Here, Prudential's removal petition was irremediably defective as to federal question jurisdiction and *silent* as to diversity. Moreover, "[t]he right to remove a state action to federal court on diversity grounds is statutory.... In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of the state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.,* 28 F.3d 269, 274 (2d Cir.1994). Given this restrictive policy and given Prudential's failure to offer any reason for not alleging diversity jurisdiction in its original removal petition, the Court declines to grant leave to add new grounds for federal jurisdiction.

*CONCLUSION*

For the reasons stated above, plaintiff's motion to remand to the New York County Supreme Court is granted. Defendants' motion to strike the demand for a jury trial is accordingly denied as moot.

SO ORDERED.