State of WEST VIRGINIA ex rel. Darrell V. MCGRAW, Jr., Attorney General, Plaintiff

v.

MINNESOTA MINING AND MANUFACTURING COMPANY, a foreign corporation, Mine Safety Appliances Company, a foreign corporation, and American Optical Corporation, a foreign corporation, Defendants

No. CIV.A.2:03–2161.

United States District Court, S.D. West Virginia.

Jan. 25, 2005.

Alva A. Hollon, Jr., John O. Hollon, Sams & Hollon, Jacksonville, FL, Frances A. Hughes, Office of the Attorney General, Joshua I. Barrett, Rudolph L. DiTrapano, Sean P. McGinley, Ditrapano Barrett & Dipiero, Charleston, WV, Michael T. Gallagher, Russell Serafin, The Gallagher Law Firm, Houston, TX, for Plaintiffs.

Andre M. Pauka, Carrie A. Jablonski, Jeffrey A. Hall, Philip S. Beck, Bartlit Beck Herman Palenchar & Scott, Chicago, IL, Bryant J. Spann, David B. Thomas, Wm. Scott Wickline, Allen Guthrie McHugh & Thomas, Beth Ann Rauer, Bruce M. Jacobs, Heather Heiskell Jones, James S. Crockett, Jr., Spilman Thomas & Battle, John T. Dinsmore, Flaherty Sensabaugh & Bonasso, Raymond S. Franks, II, Stephen P. Goodwin, Goodwin & Goodwin, Charleston, WV, Karen K. Maston, Vanessa L. Vance, Connelly Baker Wotring & Jackson, Houston, TX, for Defendants.

## ORDER

COPENHAVER, District Judge.

Pending are plaintiff's motion to remand, filed October 10, 2003, and defendants' joint motion to amend their notice of removal, filed November 17, 2003.[1]

### I. Factual and Procedural Posture

On August 6, 2003, plaintiff instituted this action in the Circuit Court of Lincoln County. The case arises out of the ostensible failure of countless respirators/dust masks used primarily by those working in the mining industry in West Virginia. As a result of the devices' alleged shortcomings, plaintiff asserts it has incurred an enormous financial liability. Specifically, plaintiff contends it will spend hundreds of millions of dollars to care for thousands of miners who used the respirators/dust masks and who subsequently contracted occupational pneumoconiosis (Compl. at ¶ 1.)

Plaintiff alleges purely state law claims for (1) violations of the West Virginia Consumer Credit and Protection Act (CCPA), W. Va.Code § 46A–6–101, et seq. (Count I), (2) strict liability (Count II), (3) negligence (Count III), (4) breach of implied warranty (Count IV), (5) negligent misrepresentation (Count V), and (6) punitive damages (Count VI).

On September 12, 2003, defendants removed. The joint notice of removal alleged diversity jurisdiction pursuant to 28 U.S.C. § 1332. No defendant is a citizen of West Virginia. Regarding plaintiff's citizenship, defendants assert:

> The State of West Virginia is the named plaintiff. This designation of the State of West Virginia does not preclude removal of this action because, on information and belief, the named plaintiff is not the real party in interest. There is diversity jurisdiction when the citizenship of the real party or parties in interest is considered.

(Not. of Removal at ¶ 6.) In a footnote, defendants further contend that "[u]nder the particular circumstances of this case,

---

1. Defendants also moved on November 17, 2003, for leave to file a response in excess of the page limitation contained in the Local Rules. The court ORDERS that the motion to exceed be, and the same hereby is, granted.

even if the State of West Virginia is considered the real party in interest here, the designation of the State of West Virginia does not preclude removal of this action because the plaintiff should be deemed a citizen of the State." (*Id.*) Defendants identify neither the actual real party in interest nor its citizenship in the notice of removal.

Plaintiff moved to remand, asserting (1) the notice of removal is defective, (2) removal is improper because plaintiff is not a citizen of any state, and (3) removal is barred by the Eleventh Amendment. Defendants respond (1) Attorney General Darrell V. McGraw should be considered a citizen of West Virginia because he is acting without authority under West Virginia law and should not be cloaked with the state's status, (2) the notice of removal satisfies 28 U.S.C. § 1446(a), but an amendment to the notice of removal is permissible, if necessary, (3) the West Virginia Bureau of Employment Programs ("BEP") is the real party in interest, and (4) the Eleventh Amendment does not bar removal. On November 17, 2003, defendants moved to amend the notice of removal to allege that the BEP is a West Virginia citizen and a real party in interest.

## II. The Notice of Removal

Examination of the notice proceeds in four orderly steps. First, since it appears to be so alleged in the notice, the court addresses whether the attorney general is the real party in interest. If he is, the analysis ends. Second, defendants assert, in essence, the state is fraudulently joined because the attorney general lacks statutory authority to bring this action. As a result of this putative lack of authority, defendants contend he should be treated as a citizen of West Virginia for diversity purposes. Third, if fraudulent joinder is absent, the court proceeds to determine whether the notice adequately alleges the BEP as a real party in interest, along with

its West Virginia citizenship, even though the BEP is not mentioned by name in the notice. If the notice is deficient in this regard, the court reaches the fourth inquiry of whether amendment is proper to cure the omissions.

## A. The Attorney General as a Real Party in Interest

■ It is well-settled that " '[s]ince neither a state nor its alter ego is a citizen for purposes of diversity jurisdiction', a suit between a state, or its alter ego, and a citizen of another state is not a suit between citizens of different states and diversity jurisdiction does not exist." *Ristow v. South Carolina Ports Auth.,* 27 F.3d 84, 89 n. 6 (4th Cir.1994), *vacated on other grounds,* 513 U.S. 1011, 115 S.Ct. 567, 130 L.Ed.2d 485 (1994); *see Roche v. Lincoln Prop. Co.,* 373 F.3d 610, 613 (4th Cir.2004). For this reason, a removing defendant will often allege the state plaintiff is not a real party in interest in the case. An additional argument is that a named agency or officer is not the state's alter ego, and hence not a citizen for diversity purposes.

Because nominal parties are disregarded for diversity purposes, the real party in interest analysis is critical to the subject matter jurisdiction calculus. In *Roche,* our court of appeals observed as follows:

> Early in its history, the Supreme Court "established that the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy." *Id.* at 460–61, 100 S.Ct. 1779 (quotations and citations omitted) (emphasis added). "Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Id.* (citations omitted) (emphasis added).

Thus, in diversity cases, the general rule is that the citizenship of the real

parties in interest is determinative for purposes of diversity jurisdiction. The citizenship rule testing diversity in terms of the real party in interest is grounded in notions of federalism. It is based upon the principle that a primarily local controversy should be tried in the appropriate state forum *and that nominal or formal parties, who do not have a significant interest in the outcome of the litigation, should not be able to use the federal courts.*

*Id.* at 613, 615 (emphasis added).

Footnote one of the notice, as earlier observed, contains the principal allegation concerning the attorney general:

> Under the particular circumstances of this case, even if the State of West Virginia is considered the real party in interest here, the designation of the State of West Virginia does not preclude removal of this action because *the plaintiff should be deemed a citizen of the state.*

(Not. of Remov. ¶ 6 n.1 (emphasis added).) Although some degree of divination is required, it appears by process of elimination that the underscored language refers to the attorney general. This conclusion is indicated for at least three reasons. First, the state cannot be deemed a citizen of itself. Second, the attorney general is the only other named party in the style of the case, albeit as a relator. Third, the allegation dovetails with defendants' subsequently filed memorandum in opposition to remand. Therein, defendants assert that since the attorney general lacks the authority to bring this action, he is rightly treated as the "plaintiff" and should further "be considered a citizen of West Virginia." (Def.'s Mem. in Opp. at 20.)

■ So construed, this allegation in the footnote remains puzzling. If the state is considered a real party in interest, com-

plete diversity is absent even if the attorney general is ultimately found to be an additional real party in interest. *See State of W. Va. v. Morgan Stanley & Co. Inc.,* 747 F.Supp. 332, 338 n. 6 (S.D.W.Va. 1990)("It is suggested in [*District of Columbia ex rel. American Combustion, Inc. v. Transamerica Ins. Co.,* 797 F.2d 1041, 1047 (D.C.Cir.1986) ] that once it is determined that a state is a real party to the controversy, the complete diversity requirement enunciated in *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), cannot be met even if a diverse party is aligned with the state."), *see also Long v. District of Columbia,* 820 F.2d 409, 416 (D.C.Cir.1987)(absent dismissal of District of Columbia as a "noncitizen" and therefore nondiverse defendant, federal diversity jurisdiction also lacking in plaintiff's suit brought against a diverse codefendant); *Jakoubek v. Fortis Benefits Ins. Co.,* 301 F.Supp.2d 1045, 1049 (D.Neb. 2003); *Batton v. Georgia Gulf,* 261 F.Supp.2d 575, 582 (M.D.La.2003)(presence of state agency as a codefendant destroyed complete diversity); *Town of Ogden Dunes v. Bethlehem Steel Corp.,* 996 F.Supp. 850, 853 (N.D.Ind.1998)(no federal jurisdiction existed over codefendant steel companies where joinder of state agency as defendant destroyed complete diversity).

Perhaps realizing the import of this initial concession, defendants have altered their position in their response to plaintiff's remand motion. Defendants now assert "[t]he Attorney General's lack of authority to bring this action confirms that the State is not the real party in interest." (Mem. in Opp. at 13.) [2] Read liberally, the allegation is the foundation for defendants' argument that (1) the attorney general lacks authority to bring this action, and (2) he should consequently be deemed to be

---

**2.** Since plaintiff has not raised the point, the court leaves aside the question of whether this significant change of position requires amendment of the notice.

prosecuting this action as a West Virginia citizen.

 Defendants cite no authority holding that a state officer's *ultra vires* pursuit of recompense for the state somehow converts him into the real party in interest for diversity purposes under these circumstances. In any event, the state clearly satisfies the rather elastic test for qualifying as the real party in interest for diversity purposes, at least vis-a-vis the attorney general: [3]

> Whether a state is the real party in interest for diversity purposes must be determined by looking at the "essential nature and effect of the proceeding." In particular, a state, as a plaintiff, is the real party in interest for diversity purposes "when the relief sought is that which enures to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate."

*State of W. Va. v. Morgan Stanley & Co. Inc.*, 747 F.Supp. 332, 337 (S.D.W.Va.1990) (citations omitted).

The relief sought here is " 'hundreds of millions of dollars' in damages from defendants for monies paid on occupational pneumoconiosis claims." (Compl.¶ 1.) The original resting place of those monies, and their ultimate destination should they be recovered, are, as noted by plaintiff, spelled out in West Virginia Code section 23–3–2: [4]

> The state treasurer is the custodian of the workers' compensation fund and all premiums, deposits or other moneys payable to each fund *shall be deposited in the state treasury* to the credit of the fund for which it was assessed, transferred or collected in the manner prescribed in this chapter . . . .

W. Va.Code § 23–3–2 (emphasis added).[5] The attorney general has no claim on these monies. Instead, he seeks, whether authorized or not, to recoup monies paid out by the state as a result of defendants' alleged misfeasance. Any monies recovered will promptly find their way to the state treasury. Inasmuch as the state is an undeniable, and substantial, stakeholder in this litigation, it, and not the attorney general, qualifies as a real party in interest.

**B. Fraudulent Joinder—The Statutory Authority of the Attorney General and His Status as a Diverse West Virginia Citizen**

██ Defendants' argument concerning the attorney general's authority is more

---

**3.** The court analyzes the real party in interest status of the state vis-a-vis the BEP under section III. The court notes, however, the rather substantial argument that once the state is determined to be a real party in interest, the jurisdictional inquiry ends. *See supra* at 7–8.

**4.** The state has established a coal-workers' pneumoconiosis fund (CWP fund), "which fund shall be separate from the workers' compensation fund." W. Va.Code 23–4B–2. Like the workers' compensation fund, section 23–4B–2 provides "The state treasurer shall be the custodian of the coal-workers' pneumoconiosis fund, and all premiums, deposits or other moneys paid to the fund shall be deposited in the state treasury to the credit of the coal-workers' pneumoconiosis fund." *Id.* The parties have not attached significance to the distinction between the workers' compensation fund and the CWP fund. This is so because plaintiff perhaps envisions any recoupment to be transferred to the workers' compensation fund. The court presumes such to be the case in the absence of any contrary indication.

**5.** Some changes were made to the governing statutory scheme following removal on September 12, 2003. Where material changes were made, the court relies upon those statutory provisions in place at the time of removal. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir.1988) ("Diversity must be established at the time of removal.").

properly framed under an alternative analysis. In asserting the attorney general is powerless to assert some or all of the instant claims on the sovereign's behalf, defendants are alleging, in substance, that the state was fraudulently joined as a party in order to defeat diversity jurisdiction.

The fraudulent joinder standard is well settled. Our court of appeals notes the "heavy burden" laid upon a defendant removing a case on such grounds:

> "In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or [t]hat there has been outright fraud in the plaintiff's pleading of jurisdictional facts."

*Mayes v. Rapoport,* 198 F.3d 457, 464 (4th Cir.1999)(quoting *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232 (4th Cir. 1993)). The applicable standard "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss[.]" *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir.1999).

■ As the decision in *Hartley* illustrates, fraudulent joinder claims are subject to a rather black-and-white analysis in this circuit. Any shades of gray are resolved in favor of remand. At bottom, a plaintiff need only demonstrate a "glimmer of hope" in order to have his claims remanded:

CSX contests these points and we are unable to resolve them with the snap of a finger at this stage of the litigation. Indeed, these are questions of fact that are ordinarily left to the state court jury.

In all events, a jurisdictional inquiry is not the appropriate stage of litigation to resolve ... various uncertain questions of law and fact. Allowing joinder of the public defendants is proper ... because courts should minimize threshold litigation over jurisdiction. Jurisdictional rules direct judicial traffic. They function to steer litigation to the proper forum with a minimum of preliminary fuss. The best way to advance this objective is to accept the parties [as] joined ... unless joinder is clearly improper. To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.

· · · · ·

We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case. Hartley's claims may not succeed ultimately, but ultimate success is not required .... Rather, there need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.

*Id.* at 425–26. Defendants assert the attorney general has exceeded his authority with respect to both the common law and CCPA claims.[6] If he is authorized to

---

6. Regarding the CCPA claims, defendants also assert the attorney general has improperly employed private, special assistants here to pursue civil penalties. They contend the special assistants have a prohibited personal stake, based upon their contingent-fee agreement, in the outcome of what is in essence a prosecution. They do not disclose how this

transforms the attorney general into a private citizen for diversity purposes. In any event, the pleadings and briefing disclose private counsel have not been turned loose in a prosecutorial capacity with an improper motive. Rather, the chief deputy attorney general

bring either one of these categories of claims on the sovereign's behalf, however, the state is properly joined and defendants' argument fails.

As the parties' briefing illustrates, the constitutional and statutory authority of the attorney general has been a subject of ongoing controversy in the state for over two decades. *See, e.g.,* syl. pt. 1, *Manchin v. Browning,* 170 W.Va. 779, 781, 296 S.E.2d 909, 911 (1982); *State ex rel. Fahlgren Martin, Inc. v. McGraw,* 438 S.E.2d 338, 340, 190 W.Va. 306, 308 (1993). Questions concerning the attorney general's statutory authority have not just sparked vigorous debate between judges on the supreme court of appeals but have also resulted in at least one lengthy opinion from our court of appeals. *See In re Allen,* 106 F.3d 582, 595 (4th Cir.), *reh'g en banc denied by equally divided court,* 119 F.3d 1129 (4th Cir.1997).

As an added overlay here, the attorney general is acting pursuant to his authority under the CCPA. Defendants assert the attorney general has exceeded his statutory authority because the sales of the respirators/dust masks to employers do not qualify as "consumer transactions" under the CCPA.

The West Virginia Supreme Court of Appeals has previously held " 'under Article 7 of the [CCPA], the Attorney General is given broad powers to supervise, investigate and prosecute violations in order to see that compliance with the [CCPA] is maintained.' " *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 779, 461 S.E.2d 516, 525 (1995); *see also Manchin,* 170 W.Va. at 789, 296 S.E.2d at 919 (stating "in the areas of consumer protection and antitrust litigation, the Attorney General is statutorily charged as an administrator of the law and appears in civil proceedings on his own

filed, and remains an active participant in,

motion as the agent and legal representative of the state and the citizens thereof.").

Plaintiff's CCPA claims accuse defendants of unfair methods of competition and/or unfair deceptive acts or practices in violation of West Virginia Code section 46A–6–104, as defined in 46A–6–102(f). (Compl.¶ 23.) These claims do not appear to require the presence of either a consumer or a consumer transaction. Unfair competition and deceptive acts are proscribed by section 46A–6–104 as follows: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." W. Va.Code § 46A–6–104. The supreme court of appeals has observed this section is "among the most broadly drawn provisions contained in the [CCPA] and it is also among the most ambiguous." *McFoy v. Amerigas, Inc.,* 170 W.Va. 526, 529, 295 S.E.2d 16, 19 (1982). Further, the CCPA provides: "The attorney general may bring a civil action to restrain a person from violating this chapter and for other appropriate relief." W. Va.Code, § 46A–7–108. In addition, the attorney general is authorized to bring a civil action to recover civil penalties for repeated and willful violations. W. Va.Code § 46A–7–111(2).

Inasmuch as the supreme court of appeals could possibly conclude the attorney general may, on the state's behalf, pursue an action under section 46A–6–104 in the absence of a consumer transaction, plaintiff's CCPA claims possess at least a "glimmer of hope." *Hartley,* 187 F.3d at 426. Fraudulent joinder is thus absent. Accordingly, the state, vis-a-vis the attorney general, is seen to be the real party in interest, subject only to consideration of the role of the BEP.

this litigation.

C. Allegations Relating to the BEP and the Necessity of Amendment

■ The next question is whether the notice adequately alleges the citizenship of the BEP and its putative status as the real party in interest. Neither the agency's name nor its citizenship appear in the document.

Defendants' removal is governed by 28 U.S.C. § 1441 which provides, in relevant part, that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed." 28 U.S.C. § 1441. The district courts have original jurisdiction "of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1).

■ "The burden of demonstrating jurisdiction resides with 'the party seeking removal.'" *Dixon v. Coburg Dairy, Inc.,* 369 F.3d 811, 816 (4th Cir.2004) (quoting *Mulcahey v. Columbia Organic Chemicals Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994)). Courts strictly construe removal jurisdiction "[b]ecause removal jurisdiction raises significant federalism concerns." *Mulcahey,* 29 F.3d 148, 151. Where federal jurisdiction is in doubt, a remand is necessary. *Id.*

The governing statute requires the removing party to file a notice "containing a short and plain statement of the grounds for removal". 28 U.S.C. § 1446(a). This standard is coextensive with the liberal approach of Rule 8(a), Federal Rules of Civil Procedure. 28 U.S.C.A. § 1446(a) cmt. A certain level of specificity, however, is yet required of defendants removing to federal court:

> Although the new text of Section 1446(a) is designed to make the statement of the grounds for removal simpler, there is no question that the notice must make the basis for the federal court's exercise of removal jurisdiction clear and contain enough information so that the district judge can determine whether removal jurisdiction exists.
>
> [I]t should be sufficient if the court is provided the facts from which removal jurisdiction can be determined.

14C Charles A. Wright, Arthur R. Miller & Edward C. Cooper, *Federal Practice & Procedure* § 3733 (3d ed.1998) (footnotes omitted).

Defendants' notice fails in this regard. The omission of the BEP as a real party in interest, along with an allegation of its citizenship, is fatal to the exercise of jurisdiction over it. Inasmuch as the notice makes no mention of either the BEP as a real party in interest or its citizenship, it is plainly flawed. Without these facts, the court cannot determine whether removal jurisdiction exists.

D. Amendment of the Notice

In view of the omissions in the notice, the court reaches the final step in the analysis, namely, whether defendants should be granted leave to amend. Two statutes are relevant to the inquiry. First, the strict time limit of 28 U.S.C. § 1446(b) provides pertinently:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based ....

28 U.S.C. § 1446(b). Second, 28 U.S.C. § 1653 provides, without qualification, that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. At least one court has noted correctly the apparent tension existing between these two statutes. *Stein v. Sprint Communs. Co., L.P.,* 968 F.Supp. 371, 375 (N.D.Ill.

1997) ("Admittedly, § 1446(b) presents some tension with 28 U.S.C. § 1653 . . . .").

This tension has provoked a split of authority on the applicable standard:

> The schools of thought on this question are split between the "liberal" school and the "strict constructionist" school. In the liberal view, Courts should liberally grant leave to amend jurisdictional allegations in Notices of Removal, with the test being the prejudice suffered by the plaintiff who originally chose the state forum. The strict constructionist school, on the other hand, holds that a court should not, after 28 U.S.C. § 1446(b)'s 30–day limit has expired, grant leave to amend jurisdictional allegations if the allegations are missing from the Notice of Removal. In this view, a Court should allow amendment under 28 U.S.C. § 1653 only if the jurisdictional allegation appears imperfectly, not if it is missing entirely. "[M]issing allegations may not be supplied nor new allegations furnished" after 28 U.S.C. § 1446(b)'s 30–day time period has expired.

*FHC Options, Inc. v. Security Life Ins. Co. of Am.*, 993 F.Supp. 378, 381 (E.D.Va. 1998) (citations omitted); *see Castle v. Laurel Creek Co., Inc.*, 848 F.Supp. 62, 63–64 (S.D.W.Va.1994).

In analyzing the competing analyses, the court is influenced by at least two considerations. First, many courts observe that, in applying section 1653, "[j]urisdiction ought to depend more upon the truth of defendant's allegation of diversity than upon defendant's choice of verbiage to allege it." *Goforth v. Allstate Ins. Co.*, 213 F.Supp. 595, 597 (W.D.N.C.1963); *see Whitmire v. Victus Ltd. t/a Master Design Furn.*, 212 F.3d 885, 887 (5th Cir.2000); *John Birch Soc'y v. Nat'l Broadcasting Co.*, 377 F.2d 194, 198 (2d Cir.1967); *Miller v. Davis*, 507 F.2d 308, 311 (6th Cir. 1974).

Second, at least in a non-removal setting, our court of appeals has reacted graciously in cases of omitted jurisdictional allegations. In *Clephas v. Fagelson, Shonberger, Payne & Arthur*, 719 F.2d 92 (4th Cir.1983), plaintiff omitted his own citizenship, along with the identities and citizenships of the partners of the unincorporated association that he sued. Despite those glaring omissions, the court of appeals stated:

> Having found that we lack jurisdiction in this case, we would ordinarily not proceed to consider the merits of the case. However, here we must decide what form of order we should enter. Inasmuch as *in all likelihood* each member of the defendant partnership is a citizen of Virginia, and *it was a mere inadvertence that led the plaintiff to omit allegation and proof to that effect*, we, provided that we were persuaded that the plaintiff's case had merit, *would view sympathetically a motion to enter an order remanding this case to the district court to permit the plaintiff belatedly to allege and prove such diversity of citizenship.*

*Id.* at 94 (emphasis added). With these dual considerations in mind, the court turns to the two existing lines of authority. As will become apparent, however, a choice between the competing standards is ultimately unnecessary in this case.

Under the liberal approach, with its focus on reaching the merits of a dispute, the result is clear. Given plaintiff suffers no prejudice, defendants would be permitted to make the necessary amendments to their flawed notice.

The question is closer under the stricter approach. Judge Rebecca Beach Smith summarized the analysis in a recent, thoughtful, and comprehensive opinion:

> [T]he analysis must proceed in two steps. First, the court must determine

whether the defendant "imperfectly stated" or "omitted completely" a ground for removal. If a ground for removal was omitted completely, then the court has no discretion to permit amendment under § 1653, and must remand the case to the state court. Section 1653 itself dictates this result, because it permits amendments of "defective allegations" of jurisdiction, not the addition of additional allegations.

On the other hand, if the defendant has imperfectly stated a ground for removal, the court proceeds to the second step of the analysis. Where a ground for removal is imperfectly stated, whether to permit amendment is within the court's discretion, according to the facts and circumstances of each case. Relevant to this discretionary decision is whether the amendment sought is merely a "technical" amendment or whether it is "material and substantial." An amendment is "material and substantial," for example, where it is likely to lead to a significant factual dispute between the parties. In cases where permitting amendment will result in a factual dispute requiring additional litigation, it may be sensible not to permit the defendant to amend the removal petition, because one of the purposes of the thirty-day removal period of 28 U.S.C. § 1446(b) is to ensure that litigation is not unduly delayed by uncertainty as to subject matter jurisdiction.

*Muhlenbeck v. KI, LLC,* 304 F.Supp.2d 797, 801 (E.D.Va.2004); *Heller v. Allied Textile Companies, Ltd.,* 276 F.Supp.2d 175, 181 (D.Me.2003)("A defective allegation of jurisdiction occurs where amendment is necessary to 'set forth more specifically the jurisdictional grounds for removal which were imperfectly stated in the original petition.' Thus, defective allegations may be amended under section 1653 as long as the provision is not employed to produce jurisdiction where none actually existed..... [T]he section 1653 remedy is limited to building upon an already extant jurisdictional foundation. ") (citation omitted).[7]

Before applying the two-step analysis, it is important to note that even among those courts employing the stricter approach, recent cases indicate a growing flexibility to permit amendments. *See, e.g., Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840 (9th Cir.2002)(permitting amendment where notice of removal "only summarily alleged" the amount in controversy ...."); *Muhlenbeck,* 304 F.Supp.2d at 801 (allowing amendment to add names and citizenship of LLC owners). As noted, the developing rule is that while one cannot amend to add additional statutory grounds for removal, defendants may set forth in proper form something they stated imperfectly in the original notice. *Compare Strauss v. American Home Prods. Corp.,* 208 F.Supp.2d 711, 718 (S.D.Tex.2002)(stating "[T]he proposed amendment does not attempt to add a new basis for federal subject matter jurisdiction. Rather, [it] seeks only to remedy a technical defect in [the] Notice of Removal by clarifying the facts that underlie its prior allegation of diversity jurisdiction. Thus, the applicable case law overwhelmingly counsels in favor of allowing [amendment]."); *Davis v. Life Investors Ins. Co. of Am., Inc.,* 214 F.Supp.2d 691, 693 (S.D.Miss.2002)(same),

---

7. The court in *Muhlenbeck* also observed correctly the limited guidance from our court of appeals in this area:

The Fourth Circuit has not published any opinion ruling on the issue, but in an unpublished opinion held that a corporation that failed to state its principal place of business in the removal petition should be permitted to amend. *Nutter v. New Rents, Inc.,* 1991 WL 193490 at *2 (4th Cir.1991) (unpublished opinion).

*Muhlenbeck,* 304 F.Supp.2d at 800.

*with ARCO Environ. Remed., L.L.C. v. Dep't of Health & Environ. Qual.*, 213 F.3d 1108, 1117 (9th Cir.2000); *Barrientos v. UT–Battelle, LLC* 284 F.Supp.2d 908, 912 (S.D.Oh.2003) (denying permission to amend where defendants sought to add diversity jurisdiction as a separate basis for removal); *Arancio v. Prudential Ins. Co. of Am.*, 247 F.Supp.2d 333, 337 (S.D.N.Y.2002)("A notice of removal may not be untimely amended to add a 'new avenue of jurisdiction.'"). Reflecting the developing flexibility of the standard, there are even generous exceptions to this rule in those courts employing the stricter approach. *See Heller v. Allied Textile Companies, Ltd.*, 276 F.Supp.2d 175, 179 (D.Me.2003)(permitting amendment to add diversity of citizenship as a new basis for removal).[8]

■ Turning to the notice in this case, the question is whether defendants should be permitted to supply the identity of the alleged real party in interest, the BEP, and its West Virginia citizenship. In keeping with the case authority just analyzed, the court first considers whether defendants "imperfectly stated" or "omitted completely" a ground for removal. Defendants clearly alleged diversity of citizenship. They failed, however, to provide some key facts to explicate why that jurisdictional basis was present. Under these circumstances, it is clear the grounds were imperfectly stated rather than completely omitted.

8. Further, while it is true that courts employing a stricter approach permit amendments to correct technical as opposed to substantive defects, the typical substantive defect is an attempt by removing defendants to add an entirely new basis for federal jurisdiction. *See Davis*, 214 F.Supp.2d at 693; *Briarpatch Ltd. v. Pate*, 81 F.Supp.2d 509, 516–17 (S.D.N.Y.2000). That defect is not present here.

9. This conclusion is reinforced by common sense, a relevant consideration in the removal

Moving to the second step, the court's discretion to allow the amendment is informed by whether it is merely "technical" or of the more "material and substantial" variety. The amendment will require a legal analysis of whether the BEP is a real party in interest, but the factual record on the point is basically settled. Again, the amendment does not seek to add another basis for jurisdiction, but only to amplify the basis already alleged. Under such circumstances, the proposed amendment is closer on the sliding scale to a technical alteration as opposed to a material and substantial change.[9] Accordingly, the court ORDERS that defendants' joint motion to amend be, and the same hereby is, granted.

### III. The BEP as the Real Party in Interest and as a Diverse West Virginia Citizen

■ Defendants' argument under this heading is a slightly different animal than the real party in interest analysis conducted under section II.A. Rather than asserting the BEP's lack of authority, as with their contentions vis-a-vis the attorney general, defendants assert "[a]t all relevant times, the [BEP], not the State, had 'the sole responsibility for the administration of the workers' compensation system.'" (Defs.' Mem. in Opp. at 2) (quoting *West Virginia ex rel. Affiliated Constr. Trades Found. v. Vieweg*, 205 W.Va. 687, 692, 520 S.E.2d 854, 859 (1999))("*ACT*").

context. *Cf. McCoy v. Erie Ins. Co.*, 147 F.Supp.2d 481, 489 (S.D.W.Va.2001)(quoting *Sayre v. Potts*, 32 F.Supp.2d 881, 887 (S.D.W.Va.1999)). Although defendants did not mention the BEP explicitly, there was hardly any other entity, beyond the Workers' Compensation Commissioner and the state itself, that would otherwise qualify for real party in interest status in a case seeking recoupment of monies paid on claims administered by the BEP.

Defendants add that the BEP is not an arm or alter ego of the state in this instance, and further contend that the BEP is a West Virginia citizen and the real party in interest. *Id.* at 1. The quoted language taken from *ACT* is lacking in completeness. In context, the supreme court of appeals in *ACT* specified that it is the Workers' Compensation Commissioner, as an official in the executive branch of state government, who has the sole responsibility for administration of the workers' compensation system, including supervisory power over the BEP:

> In the instant case, a writ of prohibition is sought against the workers' compensation Commissioner who is an administrative official within the executive branch of our state government. W.Va. Code § 23–1–1(a) (1999) provides that the Commissioner "has the sole responsibility for the administration of [the workers' compensation system].... [and] shall exercise all the powers and duties described in this chapter and in ... [§ 21A–2–1, et seq.] ... of this code." W. Va.Code § 21A–2–6 (1996) provides that the Commissioner has the power to, inter alia, supervise fiscal affairs and responsibilities of the Bureau of Employment Programs ....

*Id.* at 692, 520 S.E.2d at 859.

The analysis here also proceeds in two steps. First, the court must determine whether the state is the real party in interest. If so, the inquiry ends. *State of W. Va. v. Morgan Stanley & Co. Inc.*, 747 F.Supp. 332, 336 (S.D.W.Va.1990)(stating "section 1332(a)(1) does not confer original jurisdiction in the district courts when a state is the real party in interest ....") If

the BEP is found to be the real party in interest, the court must additionally determine whether that entity is an arm or alter ego of the state. *See id.* at 339 n. 8.

Little has changed since this court's decision over a decade ago in *Morgan Stanley*. Our court of appeals has not had occasion since that time to parse the applicable considerations in determining whether a state is a real party in interest under circumstances such as those presented here. Further, the case law remains muddled on the appropriate analysis for determining whether an agency is an arm or alter ego of the state for diversity purposes. *See* David A. Johns, *State agencies, or officers thereof, as citizens for purpose of federal diversity jurisdiction under 28 USC sec. 1332*, 6 A.L.R. Fed. 615 (1971 and supp.2004); *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. 990C80656 v. Amoco Oil Co.*, 883 F.Supp. 403, 409–10 (N.D.Iowa 1995).[10]

The court applies the same analysis undertaken in *Morgan Stanley*:

> Whether a state is the real party in interest for diversity purposes must be determined by looking at the "essential nature and effect of the proceeding." *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945); *Anchor Hocking*, 681 F.Supp. at 1178 (citing *Ford Motor*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389); *West Virginia v. Haynes*, 348 F.Supp. 1374, 1377 (S.D.W.Va.1972) (citing 32 Am.Jur.2d, Federal Practice & Procedure, § 106 (1967); *Ex parte Nebraska*, 209 U.S. 436, 28 S.Ct. 581, 52 L.Ed. 876 (1908)). In particular, a state,

---

**10.** One legal encyclopedia provides a non-exclusive list of nine factors that courts have considered in the arm or alter ego analysis. 32A Am.Jur.2d Federal Courts § 860 (2004)("The courts are not in agreement as to which of the factors should be accorded the most weight, some saying that no single factor determines whether the agency is dependent on the state. Others give primary importance to the financial nexus between the agency and the state treasury and whether the agency performs an essential governmental function.")(footnotes omitted).

as a plaintiff, is the real party in interest for diversity purposes "when the relief sought is that which enures to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate." *Missouri, Kan. & Tex. Ry. Co. v. Missouri R.R. & Warehouse Comm'r,* 183 U.S. 53, 59, 22 S.Ct. 18, 20–21, 46 L.Ed. 78 (1901).

. . . . .

A narrow reading of *Missouri [Kan. & Tex. Ry. Co. v. Missouri R.R. & Warehouse Comm'r,* 183 U.S. 53, 59, 22 S.Ct. 18, 46 L.Ed. 78 (1901) ] would suggest that the state is the real party in interest for diversity purposes only when the relief sought inures to the benefit of the state alone. However, subsequent cases have not been so limiting. *So long as the state is more than a nominal or formal party and has a real interest, pecuniary or otherwise, in the outcome of the litigation, it has been held that the State is a real party to the controversy and removal on diversity grounds is improper.*

*Morgan Stanley,* 747 F.Supp. at 337–38 (emphasis added).

As noted *supra* in relation to the attorney general, the state unquestionably has a real and substantial interest in the outcome of this litigation. The primary purpose of this action is to "recover 'hundreds of millions of dollars' in damages from defendants for monies paid on occupational pneumoconiosis claims." (Compl.¶ 1.) As illustrated in section II.A, it is impossible to divorce the workers' compensation fund from the state fisc. *See* W. Va.Code § 23–3–2. The monies recovered will return to their original location in the state treasury. Precedent from the supreme court of appeals further confirms the state's overriding interest and primacy in this area:

Through the establishment of the Workers' Compensation Fund ... the Legislature created a *state operated insur-*

*ance system* which provides coverage to West Virginia employers for personal injuries sustained by their employees during the course of and resulting from their employment.

*Verizon West Virginia, Inc. v. West Virginia Bur. of Employ. Programs,* 214 W.Va. 95, 99, 586 S.E.2d 170, 174 (2003)(emphasis added); *see also* syl. pt. 3, *Repass v. Workers' Compensation Div.,* 212 W.Va. 86, 89, 569 S.E.2d 162, 165 (2002) ("The ultimate responsibility for the fiscal health of the West Virginia Workers' Compensation system *rests with the Legislature.* Balancing the conflicting goals of minimizing premiums while providing full and fair compensation to injured workers is the *exclusive province of our publicly elected legislators, and is not to be invaded by the Commissioner, or the Courts.*")(emphasis added); *West Virginia Trust Fund, Inc. v. Bailey,* 199 W.Va. 463, 475–76, 485 S.E.2d 407, 419–20 (1997)("The State continues to be responsible to public employees and others for moneys held by Trust Fund, Inc., in its pension and workers' compensation funds. If the investment in corporate equities fails to provide a return, the taxpayers will be required to reimburse pension plans.").

A recovery of the magnitude requested in the complaint would also figure in a very substantial way toward solving a recurrent problem recognized by all three branches of our state government: "the workers' compensation system's fiscal crises." *State ex rel. McKenzie v. Smith,* 212 W.Va. 288, 306–07, 569 S.E.2d 809, 827–28 (2002)(Maynard, J., dissenting)(noting steps taken to "place the workers' compensation system back on solid financial footing."); *see also Repass,* 212 W.Va. 86, 94, 569 S.E.2d 162, 170 (2002)(noting "The purported goal of ... sweeping reforms [that] envisioned ameliorating the workers' compensation fund's fiscal crisis and restoring its financial integrity."); *State ex rel. ACF Industries, Inc. v. Vieweg,* 204 W.Va. 525, 529, 514 S.E.2d 176, 180 (1999);

*State ex rel. Blankenship v. Richardson,* 196 W.Va. 726, 729–31, 474 S.E.2d 906, 909–11 (1996). Indeed, the deficit of the Workers' Compensation Fund runs into billions of dollars. (Ex. A at 20, Defs.' Mem. in Opp.)

The newly elected governor, Joe Manchin III, observed in his recent inaugural address "Our workers comp debt is the Achilles heel of our state's economy, and I firmly believe that in order to create more good jobs in West Virginia this system must be fixed and it must be fixed now. We cannot afford to wait even one more minute." Joe Manchin III, Governor, *Inaugural Address* (Jan. 17, 2005). Just one day later, illustrating the pressing urgency of the crisis, Governor Manchin called the Legislature into special session to "[c]onsider[ ] and act[ ] upon legislation relating to the financing and funding of the long-term unfunded liability debt of the Workers Compensation Commission . . . ." State of West Virginia, Executive Department, *Amended Proclamation* 1 (Jan. 18, 2005).

The Legislature, too, has struggled over the years with the sheer enormity of the problem. Illustrative of that body's concern for the solvency of the system is West Virginia Code § 23–3–6, entitled "Emergency Fiscal Measures[,]" effective July 2003:

> In addition to other measures intended by the Legislature to address the *imminent threat to the fiscal solvency of the workers' compensation fund,* the Legislature finds that the prudent use of available moneys may be necessary to supplement ongoing efforts to reduce and eliminate that threat. The provisions of this section are enacted for those purposes.

> [P]ursuant to appropriation in the budget bill for each respective fiscal year, five million dollars *of general revenue funds* [will] be transferred to the workers' compensation fund . . . .
> If in any year expenditures from the workers' compensation fund are expected to exceed assets in that fund, the executive director may . . . request a transfer of moneys from the principal of the *West Virginia tobacco settlement medical trust fund* . . . .
> It is the intent of the Legislature that . . . fourteen million dollars of funds *made available to the state pursuant to the federal Jobs and Growth Tax Relief Reconciliation Act of 2003* . . . be transferred to the workers' compensation fund . . . .
> It is the intent of the Legislature that, pursuant to legislative appropriation, one million dollars will be expired from the *alcohol beverage control administration's general administrative fund* and transferred to the workers' compensation fund . . . .
> It is the intent of the Legislature that, pursuant to legislative appropriation, four million dollars will be transferred from the unappropriated balance of the *state excess lottery reserve fund* to the workers' compensation fund . . . .

W. Va.Code § 23–3–6 (emphasis added).

The unanimity of all three branches concerning the scale of the crisis leads to one, ineluctable conclusion—the state's stake in this litigation is undeniable. Inasmuch as the sovereign has a substantial concern, pecuniary and otherwise, in the outcome of this action, it is the real party to the controversy and removal on diversity grounds is improper.[11]

---

11. Defendants, mixing the real party in interest and alter ego analyses, assert several countervailing considerations designed to demonstrate the BEP has autonomous authority over the workers' compensation fund and its administration. First, defendants assert the BEP funds the state's workers' compensation program with employer contributions, not state appropriations. They also

Accordingly, the court ORDERS that plaintiff's motion to remand be, and the same hereby is, granted.

### IV. Conclusion

For the reasons set forth herein, it is ORDERED that defendants' joint motion to amend the notice of removal be, and the same hereby is, granted. It is further ORDERED that plaintiff's motion to remand be, and the same hereby is, granted. This action is remanded to the Circuit Court of Lincoln County for all further proceedings.[12]

The Clerk is directed to forward copies of this order to all counsel of record.

contend the BEP pays benefits out of the workers' compensation fund by drawing down employer contributions and not the state fisc. Finally, they attach great significance to the fact that the workers' compensation fund is "segregated." To the extent these considerations are relevant to the real party in interest analysis, the foregoing discussion illustrates defendants' views are decidedly myopic. In any event, the court need not reach the alter ego analysis in light of its conclusion that the state is the real party in interest.

12. In view of this disposition, the court does not reach plaintiff's contentions under the Eleventh Amendment. Further, the complexity of the issues addressed herein counsels against an award of fees and costs pursuant to 28 U.S.C. § 1447(c).